W.R. GRACE AND COMPANY *et al.*, Plaintiffs, v. CSR LIMITED, Defendant and Petitioner-Appellant (Helen Ensey, Indiv. and as Adm'r of the Estate of John L. Ensey, Jr., Deceased, Plaintiff and Respondent-Appellee).

Third District    No. 3—95—0176

Opinion filed April 3, 1996.

Barry A. Short (argued), Michael P. Casey, David L. Coffman, and Yvette M. Guerra, all of Lewis, Rice & Fingersh, L.C., of St. Louis, Missouri, for appellant.

William P. Gavin, of Brown & Gavin, of Belleville, and James Hughes (argued) and William M. Connelly, both of Ness, Motley, Loadholt, Richardson & Poole, of Charleston, South Carolina, for appellee.

JUSTICE McCUSKEY delivered the opinion of the court:

John Ensey, Jr., died of mesothelioma on November 26, 1992. John's wife, Helen Ensey (Ensey), as administrator of his estate, filed her fifth amended complaint on October 15, 1993. Ensey alleges that the defendant, CSR Limited (CSR), a corporation headquartered in Australia and organized under the laws of Australia, sold asbestos to Johns-Manville Corporation (Manville), which incorporated it into transite pipe and transite sheets at its plants throughout the United States, including a plant in Waukegan, Illinois.

John was employed on several jobsites in central Illinois where he worked with the asbestos products allegedly manufactured by Manville. Ensey alleges that CSR's negligent acts proximately caused the death of her husband.

Ensey's suit against CSR and seven other defendants was filed in the circuit court of Rock Island County. CSR made a special and limited appearance to file a motion to dismiss the suit based on lack of personal jurisdiction.

On February 9, 1995, the trial court entered an order denying CSR's motion to dismiss. The trial court found that personal jurisdiction was proper because of two factors: (1) CSR waived its right to challenge personal jurisdiction in Illinois based on a judicial admission it made before the highest court of West Virginia; and (2) personal jurisdiction was proper under the Illinois and United States Constitutions. On March 1, 1995, the trial court denied CSR's motion to reconsider.

On March 10, 1995, CSR sought leave to file an interlocutory appeal with this court. On April 18, 1995, we denied CSR's motion for leave to appeal. On May 22, 1995, CSR filed a petition for leave to appeal with the supreme court, which was denied on October 4, 1995. On that same date, the supreme court issued a supervisory order vacating our April 18, 1995, order and remanding the case to this court for a determination on the merits.

For the reasons which follow, we affirm the trial court's determination that minimum contacts have been established requiring CSR to defend Ensey's lawsuit in this state. Also, we find that it is reasonable and fair for the courts of this state to exercise personal jurisdiction over CSR.

## I. BACKGROUND

Between 1948 and 1966, CSR acted as the sales agent for its

partially owned subsidiary that mined raw asbestos fibers. CSR sold the asbestos to Manville, f.o.b. various ports in Australia. Manville then used the asbestos, along with asbestos from various other suppliers from around the world, to manufacture asbestos-containing products at its plants throughout the United States. Manville was one of the world's largest manufacturers of asbestos products. The record before us establishes that CSR sold Manville 37,000 tons of crocidolite asbestos (blue fiber) from 1948 until 1966.

CSR maintains there is no evidence to support Ensey's claim that CSR was aware that its blue fiber was coming to Illinois. In oral argument before this court, CSR claimed that if its asbestos made its way to Illinois, Manville is to blame, not CSR. CSR also argues that because there is nothing in the record to show that its blue fiber, and not that of another corporation, is responsible for John's injuries and death, there is no basis for jurisdiction. We note initially that CSR has confused jurisdictional issues with causation and proof issues. The jurisdictional issue before us is preliminary to, and independent of, any determination of the merits of Ensey's claims. *Heller Financial, Inc. v. Conagra, Inc.*, 166 Ill. App. 3d 1, 4-5, 520 N.E.2d 922, 924 (1988).

Ensey claims that CSR did more than just sell asbestos to Manville without any knowledge of how, where, when and why Manville was using it. Ensey claims that CSR officials met with Manville officials in the United States, promoted expanded use of its blue fiber in various products, advertised its asbestos in a nationally circulated trade publication, and knew of Manville's uses of its blue fiber, including at a manufacturing plant in Waukegan, Illinois.

## II. ANALYSIS

The sole issue before us is whether the trial court was correct in finding that it had personal jurisdiction over CSR. On review, we will not disturb a trial court's findings concerning its exercise of personal jurisdiction unless they are against the manifest weight of the evidence. *Dilling v. Sergio*, 263 Ill. App. 3d 191, 195, 635 N.E.2d 590, 593 (1994). Following our careful review of the record, we conclude that Ensey has met her burden of establishing that personal jurisdiction over CSR is proper in this state. *Alpert v. Bertsch*, 235 Ill. App. 3d 452, 458, 601 N.E.2d 1031, 1035 (1992). Accordingly, we find the trial court's decision was not against the manifest weight of the evidence.

Because we find that the exercise of personal jurisdiction over CSR is consistent with the requirements of the due process clause, we decline to address the plaintiff's argument that CSR waived its right to challenge the assertion of personal jurisdiction in our courts. As

the United States Court of Appeals for the Seventh Circuit has recently noted: " 'if the contacts between the defendant and Illinois are sufficient to satisfy the requirements of due process, then the requirements of both the Illinois long-arm statute and the U.S. Constitution have been met, and no other inquiry is necessary.' " *Klump v. Duffus*, 71 F.3d 1368, 1371 (7th Cir. 1995), quoting *L.B. Foster Co. v. R.R. Service, Inc.*, 734 F. Supp. 818, 822 (N.D. Ill. 1990); see 735 ILCS 5/2—209(c) (West 1994).

■ To determine whether the exercise of personal jurisdiction is permissible, we look to the limits of the due process clause, as it is interpreted by the United States Supreme Court and our supreme court. Personal jurisdiction over an out-of-state defendant may only be exercised if the defendant has certain "minimum contacts" with the forum state so that requiring the defendant to defend in the forum does not offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 90 L. Ed. 95, 102, 66 S. Ct. 154, 158 (1945); *Wiles v. Morita Iron Works Co.*, 125 Ill. 2d 144, 150, 530 N.E.2d 1382, 1385 (1988). Thus, our analysis must focus on two factors: (1) the defendant's contacts with Illinois and (2) the fairness or reasonableness of exercising personal jurisdiction over the defendant.

## A. MINIMUM CONTACTS

■ Because this is a "stream of commerce" case, our minimum contacts analysis is controlled primarily by two Supreme Court cases. In *Asahi Metal Industry Co. v. Superior Court*, 480 U.S. 102, 94 L. Ed. 2d 92, 107 S. Ct. 1026 (1987), the court was unanimous in its holding, but divided in its rationale. All nine justices agreed that jurisdiction must fail due to the unique facts of the case, which rendered the exercise of personal jurisdiction unfair and unreasonable. Justice O'Connor and three other justices also concluded that minimum contacts had not been established.

The O'Connor view of minimum contacts requires that the out-of-state defendant do more than just place a product in the stream of commerce, which eventually causes an injury in the forum state. This view requires "[a]dditional conduct [that] may indicate an intent or purpose to serve the market in the forum State." *Asahi*, 480 U.S. at 112, 94 L. Ed. 2d at 104, 107 S. Ct. at 1032. Justice O'Connor includes as examples of such "additional conduct" such things as designing the product for the forum state, advertising in the forum state, providing advice to customers in the forum state, and marketing the product through a distributor in the forum state. *Asahi*, 480 U.S. at 112, 94 L. Ed. 2d at 104, 107 S. Ct. at 1032.

Justice Brennan, also joined by three other justices, concluded that minimum contacts had been established. Justice Brennan's view holds that personal jurisdiction premised on the placement of a product in the stream of commerce is consistent with the due process clause, without showing additional conduct on the part of the defendant. *Asahi*, 480 U.S. at 117, 94 L. Ed. 2d at 108, 107 S. Ct. at 1034-35; see also *State of West Virginia ex rel. CSR Ltd. v. MacQueen*, 190 W. Va. 695, 698, 441 S.E.2d 658, 660 (1994).

Prior to *Asahi*, the Court decided *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 62 L. Ed. 2d 490, 100 S. Ct. 559 (1980). *World-Wide*, the last majority opinion in this area, concluded that while foreseeability is relevant in determining whether minimum contacts have been established, the test is whether the defendant's conduct and connection with the forum make it foreseeable that he could be haled into court there. *World-Wide*, 444 U.S. at 297, 62 L. Ed. 2d at 501, 100 S. Ct. at 567. As the Court stated: "if the sale of a product of a manufacturer or distributor *** is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve, directly or indirectly, the market for its product in other States, it is not unreasonable to subject it to suit in one of those States." *World-Wide*, 444 U.S. at 297, 62 L. Ed. 2d at 501, 100 S. Ct. at 567.

■ The record before us supports a finding of minimum contacts. This result is obtained under any of the three Supreme Court views discussed above. Under Justice Brennan's analysis, it is clear that CSR introduced tons of asbestos into the stream of commerce with knowledge that it was being incorporated into products manufactured by Manville for use in Illinois and every other state. Moreover, under Brennan's analysis, because CSR was aware that its asbestos was being sold in Illinois, it cannot claim it is an unfair surprise that it is required to defend a lawsuit in this state. *Asahi*, 480 U.S. at 117, 94 L. Ed. 2d at 107, 107 S. Ct. at 1034-35.

Jurisdiction is also proper under Justice O'Connor's analysis. The record before us supports the assertion that CSR did more than just place its asbestos into the stream of commerce. CSR had an on-going commercial relationship with Manville. CSR officials visited the United States to promote the use of their blue fiber, suggest new uses, and assure competitive pricing and quality. In October 1956, a CSR official attended a Manville sales conference in the United States and met with senior officers from *all Manville plants*. At the time, Manville had a factory in Waukegan, Illinois. A CSR official interviewed a number of Manville officials and received no complaints regarding the quality of CSR's blue fiber. CSR advertised in a national

trade magazine. As a result, we find ample evidence of "additional conduct" by CSR in reaching out to Illinois and promoting the sale and use of its product here.

We further conclude that the contacts mentioned above also satisfy the requirements of *World-Wide*. Through its on-going and continuous relationship with Manville, nationwide advertising, and the promotion of expanded use of its asbestos, CSR sought to serve the market for its product in Illinois. As a consequence, CSR could certainly anticipate being haled into court in this forum.

## B. REASONABLENESS

■ After establishing that CSR has the required minimum contacts with Illinois, we must examine other relevant factors to determine whether it is reasonable and fair for our courts to exercise personal jurisdiction over CSR. Such factors may include: (1) the burden on the defendant; (2) the interest of the forum state; (3) the interest of the plaintiff in obtaining relief; (4) the interest of the interstate judicial system in obtaining the most efficient relief; and (5) the interests of our sister states in furthering their own policies. *Asahi*, 480 U.S. at 113, 94 L. Ed. 2d at 105, 107 S. Ct. at 1033. An analysis of the relevant factors clearly reveals that the exercise of personal jurisdiction in Illinois is reasonable and fair.

While we are mindful that CSR is a foreign corporation, the record indicates only a slight burden for CSR to defend this action in Illinois. CSR has been a party to litigation in several states and has retained local counsel. As a result, CSR is no stranger to the United States legal system. In addition, some discovery has already occurred, and documentation is available in Illinois. In contrast, Ensey's interest in obtaining relief in Illinois is great. As CSR's counsel conceded in oral argument before this court, Ensey would be forced to seek relief in Australia if she is not afforded the opportunity to maintain her lawsuit in Illinois. Clearly, such a burden on Ensey would be prohibitive. Similarly, Illinois has a great interest in providing a forum by which its citizens may seek relief from wrongs they have suffered.

## III. CONCLUSION

■ We determine that Ensey has met her burden of establishing CSR's minimum contacts with Illinois under the Supreme Court's analysis in *Asahi* and *World-Wide*. In addition, the exercise of personal jurisdiction does not offend traditional notions of fair play

1050

and substantial justice. Accordingly, the decision of the circuit court of Rock Island County is affirmed.

Affirmed.

BRESLIN, P.J., and LYTTON, J., concur.