78 Cal.Rptr.2d 167 (1998)
66 Cal.App.4th 550
CASSIAR MINING CORP., Petitioner,
v.
The SUPERIOR COURT of Orange County, Respondent;
Eugene Anderson et al., Real Parties in Interest.
No. G023070.
Court of Appeal, Fourth District, Division Three.
September 1, 1998.
*168 Tuttle & Taylor, Mark Borenstein and Jeffrey S. Karr, Los Angeles, Shea & Gardner, David Booth Beers and Dana J. Martin, Washington, DC, for Petitioner.
No appearance for Respondent.
Brayton Harley & Curtis, Philip A. Harley, Novato, and James L. Oberman, Hercules, for Real Parties in Interest.

OPINION
CROSBY, Associate Justice.
For some 40 years, Cassiar Mining Corporation, a Canadian company, admittedly sold thousands of tons of raw asbestos fiber directly to California manufacturers who incorporated the asbestos into finished products. California workers allegedly were exposed to these asbestos fibers here, thereby sustaining progressive lung diseases. They claim Cassiar failed to adequately warn of the health risks.
We apply the Supreme Court's decision in Vons Companies, Inc. v. Seabest Foods, Inc. (1996) 14 Cal.4th 434, 58 Cal.Rptr.2d 899, 926 P.2d 1085 to find sufficient contacts to justify the exercise of specific jurisdiction. The instant litigation results from injuries "related to" Cassiar's forum activities of selling asbestos to certain companies located in California.
Cassiar argues there is no "evidence of record" that plaintiffs were actually exposed to the asbestos fibers it sold in California or sustained injury as a result. Following Vons we will not impose such a strict causation burden for jurisdictional purposes, nor will we require a mini-trial. It is manifestly "fair" to require that Cassiar account in California for the consequences of its activities within the state, and Cassiar has not presented any compelling considerations to suggest otherwise.

I
Cassiar was incorporated in Canada in 1951. It began its mining operations in British Columbia in 1953, and mined, milled, and sold raw asbestos fiber. It ceased operations in 1992, when it went bankrupt and subsequently dissolved.
Cassiar did not itself manufacture or sell any finished products. Instead it sold the raw asbestos fibers to manufacturers, including companies such as Johns-Manville, Fibreboard, and CertainTeed, with plants in California. For some 38 years (from 1953 until 1991), Cassiar sold thousands of tons of raw asbestos to these California operations. It has made no sales or otherwise had any contacts with California since 1991.
Cassiar first became a target of asbestos lawsuits in the 1970s. It has appeared and defended such lawsuits in California and has not challenged California's specific jurisdiction where it admittedly supplied the raw asbestos to which the plaintiffs were exposed. (See, e.g., Gutierrez v. Cassiar Mining Corp. (1998) 64 Cal.App.4th 148, 151-152, 75 Cal. Rptr.2d 132 [affirming in part and reversing in part jury verdict against Cassiar for supplying asbestos to plaintiffs jobsite, a CertainTeed cement plant in Santa Clara].) As Cassiar explains, "We do not contest jurisdiction in cases where it's clearly connected to Cassiar's past contacts with the State of California. *169 [¶] For example ... a case brought by workers who worked at the plant that Cassiar shipped fiber to, we'd answer, defend, we don't make an issue of it, but there's a difference between defending a limited number of cases where there's a clear connection with the forum and sort of an infinite number of cases where the connection is speculative at best."
The instant litigation is brought by 10 workers who allegedly sustained asbestos-related lung injuries as a result of inhaling asbestos during the course of their employment. Cassiar is one of 162 named defendants said to have manufactured, distributed, supplied, or installed asbestos products to which plaintiffs were exposed at their jobsites. Plaintiffs claim they were injured when they inhaled asbestos supplied by Cassiar to such companies as Fibreboard (in Emeryville), CertainTeed (in Santa Clara) and Johns-Manville (in Lompoe). But, unlike the worker in Gutierrez, none of the plaintiffs worked at the Fibreboard, CertainTeed or Johns-Manville plants where Cassiar shipped the asbestos.
Cassiar appeared specially and moved to quash service of the summons. While conceding it sold asbestos fiber to these "certain discrete locations in California between 1953 and 1991," Cassiar declared, "no sales of asbestos fib[er] [were made] at any time to any jobsite where any plaintiff alleges occupational exposure to asbestos...." Plaintiffs' counter declarations did not establish any causal link between their injuries and Cassiar's California sales.
The superior court denied Cassiar's motion to quash. Cassiar filed a petition for writ of mandate. We issued an order to show cause and set the matter for hearing.

II
Cassiar has a liberty interest in not being subjected to the jurisdiction of California courts if its connection with this state falls below the "minimum contacts" threshold, or if so doing will violate "`traditional notions of fair play and substantial justice.'" (International Shoe Co. v. Washington (1945) 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95.) The minimum contacts requirement prevents nonresident defendants from being subjected to California jurisdiction "`solely as a result of "random," "fortuitous," or "attenuated" contacts.'" (Vons Companies, Inc. v. Seabest Foods, Inc., supra, 14 Cal.4th at p. 445, 58 Cal.Rptr.2d 899, 926 P.2d 1085, citing Burger King Corp. v. Rudzewicz (1985) 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528.) This affords nonresidents some degree of predictability and certainty about when they will be subjected to the jurisdiction of the forum state. California's long-arm statute is intended to provide the broadest possible jurisdiction subject only to federal constitutional limitations. (Code Civ. Proc, § 410.10; Sibley v. Superior Court (1976) 16 Cal.3d 442, 445, 128 Cal.Rptr. 34, 546 P.2d 322.)
Cassiar's contacts with California do not appear to be so continuous and systematic as to establish California's general jurisdiction over any cause of action against Cassiar, regardless of its relationship with the forum. (As You Sow v. Crawford Laboratories, Inc. (1996) 50 Cal.App.4th 1859, 1868, 58 Cal. Rptr.2d 654.) A Canadian company headquartered in Vancouver, Cassiar had no offices, employees, bank accounts, or real property within the state. It did not advertise in any California trade journals or publications. It had no further contacts with California once it halted ordinary business operations in 1991.
But that does not end our inquiry. Even if Cassiar had severed any California connections long before the time of suit, it still may be subject to the state's specific jurisdiction if it has (1) purposefully derived benefits from California activities, and (2) the subject lawsuit is "related to" or "arises out" of its California contacts. (See Vons Companies, Inc. v. Seabest Foods, Inc., supra, 14 Cal.4th at p. 446, 58 Cal.Rptr.2d 899, 926 P.2d 1085.)
It is not true, as Cassiar has suggested, that jurisdiction is being sought merely because "we sold asbestos fiber anywhere in the world and it somehow wound up in California in some form, in some manner Cassiar had nothing to do with." Neither is jurisdiction invoked solely because of conclusory allegations in an unverified complaint. (Goehring *170 v. Superior Court (1998) 62 Cal.App.4th 894, 909, 73 Cal.Rptr.2d 105.) "Merely knowing the product will enter California" does not comply with constitutional minimum contacts requirements; instead, the foreign defendant must have "some control over [the] ultimate destination" in California. (As You Sow v. Crawford Laboratories, Inc., supra, 50 Cal.App.4th at p. 1869, 58 Cal.Rptr.2d 654.)
Plaintiffs' declarations show  and Cassiar does not dispute  that Cassiar sold thousands of tons of raw asbestos fibers directly to California locations for some 38 years. Far from fortuitous or random connections, the record shows Cassiar purposefully directed raw asbestos fibers to these California sites. It was Cassiar, not plaintiffs, that formed a "substantial economic connection with this state." To require Cassiar to answer plaintiffs' complaint "is not to allow a third party unilaterally to draw [Cassiar] into a connection with the state; rather it was [Cassiar and the Californiabased manufacturers] who established the connection." (Vons Companies, Inc. v. Seabest Foods, Inc., supra, 14 Cal.4th at p. 451, 58 Cal.Rptr.2d 899, 926 P.2d 1085.)[1]
In As You Sow v. Crawford Laboratories, Inc., supra, 50 Cal.App.4th 1859, 1869, 58 Cal.Rptr.2d 654, the court relied upon evidence of 16 discrete sales by an Illinois paint manufacturer over a six-year period as substantial evidence of purposeful availment in a Proposition 65 lawsuit regarding the adequacy of warnings of hazardous materials. Even though its California sales never amounted to more than one percent of its total sales, specific jurisdiction was established because the manufacturer "purposefully consummated business arrangements with California companies on 16 separate occasions so it could profit from the products' use in California." (Id. at p. 1871, 58 Cal.Rptr.2d 654.)
It was equally foreseeable that asbestos fiber which was directed by Cassiar to California would be used in California and could give rise to tort litigation in California. Cassiar has "knowingly availfe[d] itself of the benefits accruing from its activities within the forum...." (Felix v. Bomoro Kommanditgesellschaft, supra, 196 Cal.App.3d at p. 116, 241 Cal.Rptr. 670.) We conclude from this history that Cassiar intended to serve the California market, thereby becoming subject to its specific jurisdiction for lawsuits having a "substantial connection" with its forum activities. (Vons Companies, Inc. v. Seabest Foods, Inc., supra, 14 Cal.4th at p. 452, 58 Cal.Rptr.2d 899, 926 P.2d 1085 ["as long as the claim bears a substantial connection to the nonresident's forum contacts, the exercise of specific jurisdiction is appropriate"].)

III
Cassiar attacks plaintiffs' showing of a "substantial connection" between its California *171 asbestos sales and plaintiffs' injuries. According to Cassiar, "you can only have specific jurisdiction if the cause of action arises out of those contacts with the state. If [it does] not, the state case has no specific jurisdiction. That's why it's critical they come up with some evidence to show that Cassiar's sales into the State of California have something to do with these plaintiffs' causes of action."
For jurisdictional purposes, we find no legal support for Cassiar's insistence upon (as counsel urged during oral argument) a "plaintiff-specific link" between its California sales of raw asbestos and the underlying litigation. Indeed, Vons, the leading California authority, expressly rejected similar efforts to impose such strict requirements in specific jurisdiction cases. In its place, the Supreme Court chose a "relaxed, flexible standard, rather than one requiring that the plaintiffs claim arise out of the forum contact in any narrow sense...." (Vons Companies, Inc. v. Seabest Foods, Inc., supra, 14 Cal.4th at p. 455, 58 Cal.Rptr.2d 899, 926 P.2d 1085.) A unanimous court stated, "the defendant's forum activities need not be directed at the plaintiff in order to give rise to specific jurisdiction.... [T]he nexus required to establish specific jurisdiction is between the defendant, the forum, and the litigation [citations]  not between the plaintiff and the defendant.... [T]he relevant contacts are said to be with the forum, because it is the defendant's choice to take advantage of opportunities that exist in the forum that subjects it to jurisdiction." (Id. at pp. 457-58, 58 Cal.Rptr.2d 899, 926 P.2d 1085.)
Vons involved an E. coli outbreak at various Jack-in-the-Box restaurants in the Pacific Northwest allegedly caused by contaminated hamburger patties from a Vons meat packing plant in El Monte. Vons, which became embroiled in litigation in California, sought indemnity from WRMI, a Washington state franchisee, for mishandling the meat, which WRMI purchased and cooked in Washington. WRMI challenged Vons' efforts to bring it into a California forum because Vons failed to demonstrate that its tort liability had anything to do with its contacts with the California-based franchiser. According to WRMI (and the Court of Appeal), "unless the forum contact proximately caused the occurrence that injured the plaintiff, the connection between the contacts and the claim is insufficient to permit the exercise of specific jurisdiction." (Id. at p. 461, 58 Cal.Rptr.2d 899, 926 P.2d 1085.)
The Supreme Court rejected a mechanical proximate cause test for evaluating the connection between a nonresident defendant's forum activities and a plaintiffs cause of action. (Id. at p. 463, 58 Cal.Rptr.2d 899, 926 P.2d 1085.) The court stressed that the relevant standard was painted in "relatively broad terms" (id. at p. 468, 58 Cal.Rptr.2d 899, 926 P.2d 1085) and formulated in the disjunctive: the cause of action either must "`arise out of or be `related to' the defendant's forum activity in order to warrant the exercise of specific jurisdiction...." (Id. at p. 451, 58 Cal.Rptr.2d 899, 926 P.2d 1085, italics added.)
Instead of a bright-line rule, the Supreme Court chose the amorphous "goal of fairness" (id. at p. 468, 58 Cal.Rptr.2d 899, 926 P.2d 1085), recognizing "few answers will be written `in black and white. The greys are dominant and even among them the shades are innumerable.'" (Id. at p. 475, 58 Cal.Rptr.2d 899, 926 P.2d 1085, internal quotation marks omitted.) There is a sliding scale or continuum between the defendant's contacts and the plaintiffs claim "so that the greater the intensity of forum activity, the lesser the relationship required between the contact and the claim." (Id. at p. 453, 58 Cal.Rptr.2d 899, 926 P.2d 1085.)
The connection between plaintiffs' complaint and Cassiar's forum-based activities meets the Vons relatedness test. Plaintiffs who were exposed to asbestos fibers within California are suing Cassiar only because it purposefully sold asbestos fiber in this state. Cassiar's obligations (if any) to plaintiffs are connected to its California-based activities. The goal of fairness to defendants is met by extending the burdens of California jurisdiction over a defendant who purposefully availed itself of the benefits of selling asbestos fibers within the state. Since plaintiffs were harmed "`while engaged in activities *172 integral to the relationship [Cassiar] sought to establish, we think the nexus between the contacts and the cause of action is sufficiently strong to survive the due process inquiry at least at the relatedness stage.'" (Vons Companies, Inc. v. Seabest Foods, Inc., supra, 14 Cal.4th at p. 470, 58 Cal.Rptr.2d 899, 926 P.2d 1085.)
Our conclusion does not necessarily mean, as Cassiar contends, that it will be subject to jurisdiction in California in all asbestos cases, even those that do not involve plaintiffs exposed to fiber from Cassiar's California sales. (Cassiar gives, as an example, a plaintiff who was exposed to asbestos in Chile but who subsequently moved to California where he got sick and died.) According to the continuum described in Vons, "as the relationship of the defendant with the state seeking to exercise jurisdiction over him grows more tenuous, the scope of jurisdiction also retracts..." (Vons Companies, Inc. v. Seabest Foods, Inc., supra, 14 Cal.4th at p. 448, 58 Cal.Rptr.2d 899, 926 P.2d 1085.) Unlike the proffered analogy of a foreign defendant, a foreign sale and a foreign exposure, the instant case involves California contacts, California plaintiffs, and a California exposure. Plaintiffs have shown the requisite connection between their causes of action and Cassiar's sales of asbestos fiber to California.
In insisting these 10 plaintiffs provide facts at the jurisdictional stage directly linking their claims with its asbestos sales, Cassiar ignores the Supreme Court's caution against mixing tort concepts with jurisdictional ones because the two are "entirely unrelated." (Vons Companies, Inc. v. Seabest Foods, Inc., supra, 14 Cal.4th at p. 464, 58 Cal.Rptr.2d 899, 926 P.2d 1085.) A foreign defendant who has voluntarily chosen to affiliate itself with a forum "reasonably must anticipate exposure to litigation in the forum beyond claims that are in a narrow sense proximately caused by forum activities." (Id. at p. 464, 58 Cal.Rptr.2d 899, 926 P.2d 1085.)
Other courts agree. For example, in W.R. Grace & Co. v. CSR Limited, supra, 279 Ill.App.3d at p. 1046, 216 Ill.Dec. 840, 666 N.E.2d at p. 10, an Australian supplier of raw asbestos fiber challenged Illinois' jurisdiction because of the plaintiffs failure "to show that its blue fiber, and not that of another corporation, is responsible for [his] injuries and death...." The court tersely responded the supplier had "confused jurisdictional issues with causation and proof issues. The jurisdictional issue before us is prehminary to, and independent of, any determination of the merits of [plaintiffs] claims." (Ibid.) As one commentator observed, "We must avoid a `mini-trial' on the jurisdictional issue." (Weintraub, A Map Out Of The Personal Jurisdiction Labyrinth (1995) 28 U.C. Davis L.Rev. 531, 547.)
Concerns about plaintiffs' deficiencies of proof should be addressed through the substantive law of torts. If, as Cassiar contends, plaintiffs lack substantial evidence that their injuries were caused by exposure to its asbestos fibers, then Cassiar may have a way out before trial.

IV
Where, as here, plaintiffs have established sufficient minimum contacts to pass constitutional muster, the burden shifts to Cassiar to make a compelling case as to why jurisdiction is unreasonable. (Vons Companies, Inc. v. Seabest Foods, Inc., supra, 14 Cal.4th at p. 449, 58 Cal.Rptr.2d 899, 926 P.2d 1085.) Cassiar has not done so. California has a strong interest in providing a forum to the 10 California residents who experienced occupational exposure to asbestos on California jobsites. Cassiar is not a stranger to California litigation (Gutierrez v. Cassiar Mining Corp., supra, 64 Cal.App.4th 148, 75 Cal.Rptr.2d 132) and has agreed to forum jurisdiction over asbestos-related claims arising from its California-based sales. It makes little sense to require these plaintiffs to pursue the vast bulk of this complex asbestos litigation against 161 defendants in California, but to file a separate lawsuit against Cassiar, the 162nd defendant, in British Columbia.
This is not Asahi Metal Industry Co. v. Superior Court, supra, 480 U.S. at p. 106, 107 S.Ct. 1026, 94 L.Ed.2d 92, where a Taiwanese manufacturer of a motorcycle tire tube sought indemnity in California from a Japanese manufacturer of its valve assembly. *173 Cassiar already has anticipated being called into account in California for the consequences of sales of asbestos directed to this state. In light of these factors, it is reasonable to assert specific jurisdiction here.
The petition for writ of mandate is denied. Exercising our discretion per California Rules of Court, rule 56.4, we decline to immediately award costs in this interim proceeding; however, such costs may be awarded to the party ultimately prevailing in the discretion of the superior court.
SILLS, P.J., and BEDSWORTH, J., concur.
NOTES
[1] Other state courts have stressed this point in declining to extend jurisdiction over foreign mining companies who shipped raw asbestos ore into the national stream of commerce outside the forum state. (See, e.g., In re Minnesota Asbestos Litigation (Minn. 1996) 552 N.W.2d 242, 247 ["the plaintiffs must show that CSR intended to directly or indirectly market its product in Minnesota or that CSR delivered its asbestos into the stream of commerce with the expectation that it would be purchased by customers in Minnesota"]; Anderson v. Metropolitan Life Ins. Co. (R.I.1997) 694 A.2d 701, 703 ["there are no allegations or other evidence in the record to suggest that CSR purposefully availed itself of the privileges, benefits, and protections of doing business in Rhode Island"]; CSR Limited v. Link (Tex. 1996) 925 S.W.2d 591, 596 ["the record contains no evidence that CSR took any act purposefully directed toward selling or distributing the raw asbestos fiber in Texas. Absent such a purposeful act, foreseeability alone cannot create minimum contacts between CSR and Texas"].)

That, of course, is not our case. As discussed above, the record shows Cassiar purposely directed its activities and products toward California by selling raw asbestos to "discrete locations" within the state. Direct sales of raw asbestos to the forum satisfies specific jurisdiction even under the "stream of commerce plus" view adopted by a plurality of the United States Supreme Court in Asahi Metal Industry Co. v. Superior Court (1987) 480 U.S. 102, 112, 107 S.Ct. 1026 (plur. opn. by O'Connor, J.); see Felix v. Bomoro Kommanditgesellschaft (1987) 196 Cal.App.3d 106, 117, 241 Cal.Rptr. 670; As You Sow v. Crawford Laboratories, Inc., supra, 50 Cal.App.4th 1859, 58 Cal.Rptr.2d 654; and W.R. Grace & Co. v. CSR Limited (1996) 279 Ill.App.3d 1043, 1048-1049, 216 Ill.Dec. 840, 666 N.E.2d 8 ["Manville had a factory in Waukegan, Illinois.... [W]e find ample evidence of `additional conduct' by CSR in reaching out to Illinois and promoting the sale and use of its product here"].)