DANIEL ZAZOVE, Indiv. and for a Class of Similarly Situated Individuals, Plaintiff-Appellant, v. PELIKAN, INC., *et al.*, Defendants-Appellees.

First District (5th Division)   No. 1—00—1516

Opinion filed November 30, 2001.

800

Krislov & Associates, Ltd., of Chicago (Clinton A. Krislov and William Bogot, of counsel), for appellant.

Levin & Funkhouser, Ltd., of Chicago (Wilson P. Funkhouser and Damon E. Dunn, of counsel), for appellees.

PRESIDING JUSTICE CAMPBELL delivered the opinion of the court:

Plaintiff Daniel Zazove appeals an order of the circuit court of Cook County dismissing his amended class action complaint as against defendant Pelikan, Inc. (Pelikan-USA), for lack of personal jurisdiction. Defendant Pelikan International Handelgeshellschaft mbH & Co., KG. (Pelikan-Germany), is not a party to this appeal.

The record on appeal discloses the following facts. Plaintiff's amended class action complaint alleged that Pelikan-Germany, a German corporation, was the manufacturer of Pelikan writing instruments and that Pelikan-USA, a Tennessee corporation, was the sole United States agent-distributor for Pelikan-Germany until some time in 1996. Plaintiff alleged that he was "a well known collector of vintage and limited edition fountain pens."

Plaintiff alleged that Pelikan-Germany, through Pelikan-USA, advertised (in Illinois and throughout the United states) its Pelikan Toledo pens as being part of a limited edition of 500 pens. This advertising was placed in national and local periodicals, including Chicago Magazine. Plaintiff also alleged that Pelikan-USA disseminated brochures to prospective purchasers and retailers. A copy of one such brochure, showing a suggested retail price of $1,200, was attached as an exhibit. Plaintiff further alleged that Pelikan-USA distributed Pelikan Toledo pens to retailers in the United States.

Plaintiff alleged that he purchased a Toledo pen in the belief that it would eventually become a rare collectible. Plaintiff alleged that his

pen came with a Toledo M900 registration certificate stating in part that "[i]n the entire United States, there are only five hundred of these rare, exquisite pens." Plaintiff alleged that on September 27, 1997, he was told by a Pelikan-USA representative in Chicago that the Pelikan Toledo pens were now available for sale to the general public, though Pelikan-USA had already sold the first 500 pens. In October 1997, plaintiff received a copy of "the Fountain Pen Hospital's October 1997 Price List," which listed new Toledo pens selling for $1,075.

Plaintiff alleged that defendants had violated the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1 *et seq.* (West 1998)). Plaintiff sought declaratory and monetary relief for the class of persons who purchased the first 500 Toledo pens, as well as attorney fees and costs.

On January 5, 1998, Pelikan-USA filed a special and limited appearance. On July 30, 1999, Pelikan-USA moved to dismiss the complaint against it for lack of personal jurisdiction, pursuant to section 2—619(a)(9) of the Code of Civil Procedure (735 ILCS 5/2—619(a)(9) (West 1998)). Pelikan-USA submitted a sworn declaration by Scott Schumpert, the treasurer and secretary of Pelikan-USA. In the declaration, Schumpert states that Pelikan-USA's principal place of business is and has been in Tennessee. Schumpert also declared that Pelikan-USA was not registered to do business in the State of Illinois. Schumpert further declared that since 1990, Pelikan-USA had no offices, employees, telephone numbers, or bank accounts in Illinois. Schumpert added that Pelikan-USA had not owned or leased real estate in Illinois since 1990 and had no personal property here, except for files held by counsel relating to this litigation. Schumpert stated that while Pelikan-USA had been a past distributor for Pelikan-Germany, reselling writing instruments to independent distributors and retailers in the United States, Pelikan-USA ceased operations in March 1996, when another company obtained the exclusive distribution rights for Pelikan-Germany; Pelikan-USA no longer has any offices or employees.

On February 18, 2000, the trial court granted the motion to dismiss. On April 4, 2000, the trial court granted plaintiff's motion for a finding that there was no just reason to delay enforcement or appeal of the dismissal, pursuant to Supreme Court Rule 304(a) (155 Ill. 2d R. 304(a)). Plaintiff timely filed a notice of appeal to this court.

■ The sole issue on appeal is whether the trial court erred in dismissing the complaint against Pelikan-USA for lack of personal jurisdiction. A plaintiff has the burden of establishing a *prima facie* basis for exercising *in personam* jurisdiction over a nonresident defendant. *Kalata v. Healy*, 312 Ill. App. 3d 761, 765, 728 N.E.2d 648,

651-52 (2000); *International Business Machines Corp. v. Martin Property & Casualty Insurance Agency, Inc.*, 281 Ill. App. 3d 854, 857-58, 666 N.E.2d 866, 868 (1996). Statements in a plaintiff's pleadings that defendant does not controvert by affidavit are taken as true. *Kutner v. DeMassa*, 96 Ill. App. 3d 243, 248, 421 N.E.2d 231, 235 (1981). A plaintiff's *prima facie* case may be overcome by a defendant's uncontradicted evidence that defeats jurisdiction. *Gaidar v. Tippecanoe Distribution Service, Inc.*, 299 Ill. App. 3d 1034, 1041, 702 N.E.2d 316, 320 (1998). However, conflicts between the parties' affidavits will be resolved in favor of the plaintiff for purposes of determining whether a *prima facie* case for *in personam* jurisdiction has been made. *International Business Machines Corp.*, 281 Ill. App. 3d at 858, 666 N.E.2d at 868. When the trial court hears no courtroom testimony and determines jurisdiction solely on the basis of documentary evidence, the standard of review is *de novo*. *Stein v. Rio Parismina Lodge*, 296 Ill. App. 3d 520, 523, 695 N.E.2d 518, 521 (1998); *E.A. Cox Co. v. Road Savers International Corp.*, 271 Ill. App. 3d 144, 148, 648 N.E.2d 271, 275 (1995).

■ Plaintiff claims that Illinois courts have personal jurisdiction over Pelikan-USA under section 2—209 of the Code, which states in pertinent part:

"(a) Any person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits such person, and, if an individual, his or her personal representative, to the jurisdiction of the courts of this State as to any cause of action arising from the doing of any of such acts:

&ast;&ast;&ast;

(2) The commission of a tortious act within this State;

\* \* \*

(7) The making or performance of any contract or promise substantially connected with this State;

\* \* \*

(c) A court may also exercise jurisdiction on any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States.

\* \* \*

(f) Only causes of action arising from acts enumerated herein may be asserted against a defendant in an action in which jurisdiction over him or her is based upon subsection (a)." 735 ILCS 5/2—209 (West 1998).

For jurisdictional purposes, allegedly tortious acts need not fit within the technical definition of a tort as long as there is a breach of duty giving rise to liability. *Nelson v. Miller*, 11 Ill. 2d 378, 393-94, 143

N.E.2d 673, 681 (1957). However, following the enactment of subsection 2—209(c), which became effective in 1989, if the contacts between the defendant and Illinois are sufficient to satisfy the requirements of due process, then the requirements of the Illinois long-arm statute also have been met, and no other inquiry is necessary. See *W.R. Grace & Co. v. CSR Ltd.*, 279 Ill. App. 3d 1043, 1047, 666 N.E.2d 8, 10 (1996).

Personal jurisdiction over an out-of-state defendant may only be exercised if the defendant has certain "minimum contacts" with the forum state so that requiring the defendant to defend in the forum does not offend " 'traditional notions of fair play and substantial justice.'[Citation.]" *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 90 L. Ed. 95, 102, 66 S. Ct. 154, 158 (1945); *Wiles v. Morita Iron Works Co.*, 125 Ill. 2d 144, 150, 530 N.E.2d 1382, 1385 (1988). Thus, this court turns to consider the defendant's contacts with Illinois and the fairness or reasonableness of exercising personal jurisdiction over the defendant.

## A

■ Plaintiff argues that defendant established the requisite minimum contacts under the "stream of commerce" theory. The theory takes its name from *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297-98, 62 L. Ed. 2d 490, 502, 100 S. Ct. 559, 567 (1980), in which the Supreme Court stated that "[t]he forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased in the forum State." The *World-Wide* Court also stated that "if the sale of a product of a manufacturer or distributor *** is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve, directly or indirectly, the market for its product in other States, it is not unreasonable to subject it to suit in one of those States." *World-Wide*, 444 U.S. at 297, 62 L. Ed. 2d at 501, 100 S. Ct. at 567.

The Supreme Court subsequently split over the scope of the "stream of commerce" theory. In *Asahi Metal Industry Co. v. Superior Court*, 480 U.S. 102, 94 L. Ed. 2d 92, 107 S. Ct. 1026 (1987), the plaintiff, a California resident, was injured while riding a motorcycle on a California highway. Thereafter, alleging in part that a defective tire tube had caused his accident, the plaintiff sued the Taiwanese manufacturer of the tire tube, Cheng Shin Rubber Industrial Company, in a California court. Seeking indemnification, Cheng Shin filed a cross-complaint against the manufacturer of the tube's valve assembly, Asahi Metal Industry Company, Ltd. (Asahi), a Japanese corporation.

Eventually all claims were settled except for the cross-claim between the two manufacturers. Asahi argued that it should not be subject to suit in California and moved to quash Cheng Shin's service of summons on the ground that the due process clause of the fourteenth amendment prohibited California from exercising jurisdiction over Asahi.

The United States Supreme Court unanimously agreed that jurisdiction must fail due to the facts of the case, which rendered the exercise of personal jurisdiction unfair and unreasonable. However, the justices were split on the minimum contacts issue.

Justice O'Connor, who delivered the opinion of the Court, along with three other justices, concluded that minimum contacts had not been established. Under the O'Connor view of minimum contacts, "a defendant's awareness that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State." *Asahi*, 480 U.S. at 112, 94 L. Ed. 2d at 104, 107 S. Ct. at 1032 (plurality op.). This view requires "[a]dditional conduct [which] may indicate an intent or purpose to serve the market in the forum State." *Asahi*, 480 U.S. at 112, 94 L. Ed. 2d at 104, 107 S. Ct. at 1032 (plurality op.). Justice O'Connor included as examples of such "additional conduct" such things as designing the product for the forum state, advertising in the forum state, providing advice to customers in the forum state, and marketing the product through a distributor in the forum state. *Asahi*, 480 U.S. at 112, 94 L. Ed. 2d at 104, 107 S. Ct. at 1032 (plurality op.).

Justice Brennan, also joined by three other justices, concluded that minimum contacts *had* been established. Under the Brennan view, personal jurisdiction based on the placement of a product in the stream of commerce comports with due process, without showing additional conduct by the defendant. *Asahi*, 480 U.S. at 117, 94 L. Ed. 2d at 107-08, 107 S. Ct. at 1034-35 (Brennan, J., concurring in part, joined by White, Marshall and Blackmun, JJ.). Under this view, so long as the defendant participates in the "regular and anticipated flow of products from manufacture to distribution to retail sale" in the forum state, and so long as the defendant is "aware that the final product is being marketed in the forum state," minimum contacts between the defendant and the forum state have been established. *Asahi*, 480 U.S. at 117, 94 L. Ed. 2d at 107, 107 S. Ct. at 1034 (Brennan, J., concurring in part, joined by White, Marshall and Blackmun, JJ.).[1]

As the Illinois Supreme Court has noted, it is not possible to

---

[1] Justice Stevens, joined by two of the justices who had also joined Justice

determine from *Asahi* whether the broad or the narrow version of the "stream of commerce" theory is correct. *Wiles v. Morita Iron Works Co.*, 125 Ill. 2d 144, 159-60, 530 N.E.2d 1382, 1389 (1988). This court has generally followed the view expressed in Justice O'Connor's opinion. *E.g.*, *Loos v. American Energy Savers, Inc.*, 168 Ill. App. 3d 558, 562, 522 N.E.2d 841, 844 (1988). But see *Lichon v. Aceto Chemical Co.*, 182 Ill. App. 3d 672, 538 N.E.2d 613 (1989) (applying broader version of the theory in the exceptional context of introducing inherently dangerous or toxic products into the stream of commerce).

In this case, Pelikan-USA distributed the Toledo M900 in Illinois. Plaintiff alleged that Pelikan-USA was the sole United States agent-distributor for Pelikan-Germany, which distributed and sold Pelikan-brand writing instruments to retailers in the United States, including Illinois, until some time in 1996. The Schumpert affidavit does not contradict this allegation; indeed, it tends to support the allegation. Pelikan-USA, in response to an interrogatory, stated that there were approximately 27 authorized Pelikan retailers in Illinois in 1990. Although the parties disagree as to whether Pelikan-USA "transacted business" in Illinois,[2] the Schumpert affidavit does not contradict plaintiff's allegation that Pelikan-USA sold tens of thousands of Pelikan-brand writing instruments in Illinois annually.

Moreover, plaintiff alleged that Pelikan-USA advertised Pelikan pens in national and local periodicals. Plaintiff also alleged that Pelikan-USA disseminated brochures to prospective purchasers (by direct mailing) and retailers. Again, the Schumpert affidavit does not contradict this allegation. Instead, the Schumpert affidavit takes the position that the "transmission" of any such advertising occurred outside Illinois.

Regardless of the point of "transmission," it remains undisputed that the advertising was transmitted to Illinois and Illinois residents.

Brennan's concurring opinion, expressed no opinion on the question of whether the broad or narrow version of the "stream of commerce" theory was correct, but also stated that Asahi's regular delivery of a large volume of its products into the California market constituted minimum contacts even under Justice O'Connor's narrow version of the "stream of commerce" theory. Justice Stevens concurred in the result because he believed that California's exercise of jurisdiction over Asahi was fundamentally unfair.

[2]Pelikan-USA contends that the analysis of whether a nonresident is "transacting business" in Illinois under section 2—209(a)(1) found in *Kadala v. Cunard Lines, Ltd.*, 226 Ill. App. 3d 302, 310, 589 N.E.2d 802, 807 (1992), is controlling, even in cases where jurisdiction is analyzed under section 2—209(c). Pelikan-USA's argument fails for the reasons that follow in the main text of this opinion.

Moreover, the advertising at issue is allegedly false and forms part of the core of plaintiff's claim under section 2 of the Illinois Consumer Fraud and Deceptive Business Practices Act. This factor renders this case distinguishable from cases such as *Pilipauskas v. Yakel*, 258 Ill. App. 3d 47, 58, 629 N.E.2d 733, 741 (1994), where the nonresident defendant's marketing was not directly related to the personal injury action brought by the plaintiff.

A review of the case law involving other types of allegedly false communications is instructive. In *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 773-74, 79 L. Ed. 2d 790, 797, 104 S. Ct. 1473, 1478 (1984), a unanimous Supreme Court ruled in a libel case that New Hampshire could exercise personal jurisdiction over a nonresident magazine publisher that regularly circulated his publication in New Hampshire. In *Calder v. Jones*, 465 U.S. 783, 789-90, 79 L. Ed. 2d 804, 812-13, 104 S. Ct. 1482, 1487 (1984), a unanimous Supreme Court determined in a libel case that a California court could exercise personal jurisdiction over Florida journalists, despite the fact that they did not directly circulate the allegedly defamatory article in California, reasoning that by participating in an allegedly tortious act intentionally directed at California and a California resident, the author and editor of the article must reasonably anticipate being haled into court in California, based on the effects of their conduct in Florida. Similarly, in cases of fraudulent misrepresentation, reaching out to Illinois residents, whether by mail, telephone, telex or facsimile, with an intent to affect Illinois interests, can be a sufficient basis for exercising personal jurisdiction over a nonresident defendant. See, e.g., *FMC Corp. v. Varonos*, 892 F.2d 1308, 1312-14 (7th Cir. 1990); *Club Assistance Program, Inc. v. Zukerman*, 594 F. Supp. 341, 346-47 & nn.9-11 (N.D. Ill. 1984) (and multiple citations of Illinois case law therein).

Pelikan-USA cites two Illinois cases in which this court held that there was no personal jurisdiction over nonresident defendants based on claims brought under the Illinois Consumer Fraud and Deceptive Business Practices Act. In *Stein v. Rio Parismina Lodge*, 296 Ill. App. 3d 520, 526, 695 N.E.2d 518, 522-23 (1998), this court did not focus on the defendant's alleged misrepresentation by mail and noted that plaintiff initiated the contact with that defendant. In *Excel Energy Co. v. Pittman*, 239 Ill. App. 3d 160, 164, 606 N.E.2d 637, 640 (1992), this court held that the defendant did not purposefully direct his activities at Illinois residents, noting:

> "The plaintiffs found the advertisement for the equipment in a magazine, sought out the defendant and inquired about purchasing the equipment, and took delivery of the equipment in Oklahoma."

The aforementioned magazine appears to have been one of general national circulation. See *Excel Energy Co.*, 239 Ill. App. 3d at 162, 606 N.E.2d at 639.

In this case, Pelikan-USA, unlike the defendant at issue in *Stein*, allegedly sent the advertising brochures at issue to Illinois retailers and residents in order to market the Tuxedo M900, rather than in response to a request by the plaintiff. Unlike the defendant in *Excel Energy Co.*, Pelikan-USA allegedly advertised, not only in magazines of national circulation, but those of local circulation, and by direct mail to Illinois residents. In addition, unlike the defendant in *Excel Energy Co.*, Pelikan-USA allegedly shipped the pens into Illinois for sale. Accordingly, this case seems distinguishable from *Stein* and *Excel Energy Co.*

Pelikan-USA argues that courts generally do not extend the "stream of commerce" theory beyond the context of product liability actions. Pelikan-USA also contends that the cause of action here relates to the alleged relationship between the parties, not to the placement of a defective product in the stream of commerce.

Plaintiff does not allege that his Toledo M900 pen is defective or that it caused him a physical injury. However, as per the discussion above, allegedly false communications to Illinois residents with an intent to affect Illinois interests is a sufficient basis for exercising personal jurisdiction over a nonresident defendant, regardless of how such acts are characterized. While the "stream of commerce" theory may be based at least in part on the forum state's interest in applying its product liability laws and protecting persons from injury, the *Keeton* Court noted New Hampshire's interest in not only protecting persons against libel, but also safeguarding its populace from falsehoods. *Keeton*, 465 U.S. at 777, 79 L. Ed. 2d at 799, 104 S. Ct. at 1479. Pelikan-USA does *not* argue that Illinois has no interest in protecting its populace from consumer fraud.

Pelikan-USA further contends that the "stream of commerce" theory does not apply in the context of this case because a mere economic loss felt in Illinois does not suffice for the exercise of personal jurisdiction over a nonresident defendant. Pelikan-USA relies upon *Yates v. Muir*, 112 Ill. 2d 205, 209, 492 N.E.2d 1267, 1268 (1986), but that case addresses the "last event" doctrine for determining whether a tortious act was committed within this state under section 2—209(a)(2). *Yates* was decided before the amendment of section 2—209 that extends long-arm jurisdiction to the full extent allowed by due process of law. See also *R.W. Sawant & Co. v. Allied Programs Corp.*, 111 Ill. 2d 304, 312-13, 489 N.E.2d 1360, 1364-65 (1986) (pre-1989 analysis expressly refusing to consider whether jurisdiction would

be constitutionally permissible). More recently, this court has held that Illinois courts could exercise personal jurisdiction consistent with due process over a nonresident defendant who used the telephone and the mails as part of a scheme to defraud an Illinois resident who lost money in Illinois. *Kalata*, 312 Ill. App. 3d 761, 728 N.E.2d 648.

■ In sum, Pelikan-USA distributed Pelikan pens, including the Toledo M900, the State of Illinois and purposefully marketed the M900 to Illinois residents through a variety of media, including advertising in Chicago Magazine and by direct mail. Moreover, Pelikan-USA's marketing was allegedly premised on a false promise in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act. It might be argued that personal jurisdiction attaches only when the nonresident defendant purposefully directs a false communication at a particular Illinois citizen or regularly advertises in Illinois. However, the minimum contacts analysis is focused on the relationship between the defendant and the forum state. Accordingly, plaintiff has alleged sufficient facts to show that Pelikan-USA had the minimum contacts with Illinois necessary to assert personal jurisdiction.

### B

■ The issue remains as to the fairness or reasonableness of exercising personal jurisdiction over the defendant. When determining the reasonableness of requiring a defendant to litigate in the forum state, a court should consider the burden on the defendant, the forum state's interest in resolving the dispute, the plaintiff's interest in obtaining relief, and the interest of several states, including the forum state, in the efficient judicial resolution of the dispute and the advancement of substantive social policies. See *Asahi*, 480 U.S. at 112-15, 94 L. Ed. 2d at 104-06, 107 S. Ct. at 1032-33; *Pilipauskas*, 258 Ill. App. 3d at 56, 629 N.E.2d at 739.

■ In this regard, Pelikan-USA returns to the argument that the "stream of commerce" theory is based in part on the forum state's interest in applying its product liability laws and protecting persons from injury. As discussed above, a state also has an interest in safeguarding its populace from falsehoods. *Keeton*, 465 U.S. at 777, 79 L. Ed. 2d at 799, 104 S. Ct. at 1479. The Consumer Fraud and Deceptive Business Practices Act is intended to protect consumers, borrowers and business persons against fraud, unfair methods of competition, and other unfair and deceptive business practices. *Cripe v. Leiter*, 184 Ill. 2d 185, 190-91, 703 N.E.2d 100, 103 (1998). The nature and object of the statute are indisputably the protection of the public interest. *People ex rel. Hartigan v. Lann*, 225 Ill. App. 3d 236, 241, 587 N.E.2d 521, 524 (1992). Thus, Pelikan-USA's argument that a viola-

tion of the Consumer Fraud and Deceptive Business Practices Act does not implicate interests sufficiently significant to warrant the exercise of personal jurisdiction over a nonresident defendant is unpersuasive.

Pelikan-USA mentions, but does not focus on, the burden that would be placed on it to litigate in Illinois. The Schumpert affidavit establishes that Pelikan-USA ceased operations in March 1996 and has no offices or employees. These factors arguably suggest that it could be burdensome for Pelikan-USA to litigate in Illinois. However, considering these factors as determinative, particularly in cases of consumer fraud or common law fraud, could encourage nonresident corporations to commit various wrongs against Illinois residents, then dissolve or declare bankruptcy as a tactic to avoid personal jurisdiction in Illinois. Accordingly, while this factor weighs in Pelikan-USA's favor, it does not, by itself, demonstrate unfairness or unreasonableness sufficient to negate a *prima facie* showing of personal jurisdiction in this case.

For all of the aforementioned reasons, the order of the circuit court of Cook County is reversed and remanded for further proceedings consistent with this order.

Reversed and remanded.

GREIMAN and REID, JJ., concur.