**In re METHYL TERTIARY BUTYL ETHER ("MTBE") PRODUCTS LIABILITY LITIGATION.**

Master File No. 1:00–1898.
MDL 1358(SAS).
M21–88.

United States District Court,
S.D. New York.

Aug. 16, 2005.

Robert L. Gordon, Robin Greenwald, C. Sanders McNew, Weitz & Luxenberg, P.C., New York City, Plaintiffs' Liaison Counsel.

Alan J. Hoffman, Laurence S. Shtasel, Blank Rome, LLP, Philadelphia, PA, for Equistar Chemicals, LP.

Thomas M. Farrell, Nickens Keeton Lawless Farrel & Flack LLP, Houston, TX, for Lyondell–Citgo Refining LP.

Peter John Sacripanti, James A. Pardo, Stephen J. Riccardulli, McDermott, Will & Emery LLP, New York City, Defendants' Liaison Counsel.

## OPINION AND ORDER

SCHEINDLIN, District Judge.

### I. INTRODUCTION

Plaintiffs bring these actions seeking relief from the actual or threatened contamination of their groundwater with methyl tertiary butyl ether ("MTBE"), a chemical added to gasoline. Defendant Lyondell–Citgo Refining LP ("LCR") moves, pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, to dismiss the complaints filed against it in fifteen states: Connecticut, Florida, Illinois, Indiana, Iowa, Kansas, Louisiana, Massachusetts, New Hampshire, New Jersey, New York, Pennsylvania, Vermont, Virginia, and West Virginia (collectively, "forum states"). Defendant Equistar Chemicals, LP ("Equistar") also moves to dismiss for lack of personal jurisdiction in cases filed in nine states: Connecticut, Indiana, Kansas, Massachusetts, New Hampshire, New York, Vermont, Virginia, and West Virginia.[1] For the reasons stated below, both defendants' motions are denied.[2]

---

1. Equistar only moves to dismiss one case filed in New York: *City of New York v. Amerada Hess Corp., et al.,* No. 04 Civ. 3417.

2. LCR filed fifteen, and Equistar filed nine, separate motions to dismiss.

## II. BACKGROUND

### A. LCR

LCR is a major producer of petroleum products in the United States, earning revenues of $4.2 billion in 2003.[3] MTBE-containing gasoline is among the products manufactured at LCR's refinery in Houston, Texas.[4] In addition to gasoline, LCR derives substantial revenue from selling chemical products, such as benzene, toluene, orthoxylene, and paraxylene.[5] These chemicals are used to manufacture consumer goods, ranging from clothing, plastics, drinking cups and soft drink bottles to upholstery, videotapes, paints, and resins.[6]

LCR is a joint venture between Lyondell Chemical Company ("Lyondell"), which owns 58.75% of the company, and Citgo Petroleum Corporation ("Citgo"), which owns the remaining 41.25%.[7] LCR is part of the Lyondell "enterprise," which includes Lyondell's own chemicals business, and the Equistar, Millennium Chemi-

cals, Inc., and LCR businesses.[8] Lyondell, Citgo, and Equistar are parties to a number of agreements with LCR with respect to product sales, raw materials, and administrative services.[9] These agreements specifically provide for cooperation among them to produce MTBE and MTBE-containing gasoline.[10] Each year LCR purchases forty-four million gallons of MTBE from Equistar for blending into gasoline.[11]

LCR sells approximately 120,000 gallons of MTBE-containing gasoline per day (or 48.3 million gallons per year).[12] "Substantially all" of its gasoline is sold to Citgo, which then distributes the gasoline via its nationwide network of branded retail locations, 7–Eleven convenience stores, and independent branded marketers throughout the country.[13] Citgo's nationwide distribution network reaches nearly every state (including all of the states where LCR contests jurisdiction) through a network of over 13,500 locations, five refineries, and fifty-six refined product terminals throughout the United States.[14]

3. *See* Lyondell Chemical Company Form 10–K for the fiscal year ended December 31, 2003 ("Lyondell 10–K") at 4, Ex. A to Plaintiffs' Response to Defendant Lyondell–Citgo Refining LP's Rule 12(b)(2) Motion to Dismiss the Massachusetts Cases ("Pl. LCR MA Mem.").

4. *See id.* at 1, 23. *See also* Pl. LCR MA Mem. at 1 (citing LCR website, *available at* http://www.lyondell.com/html/lyondell/enterprise_3.shtml (stating that LCR "is a 'leader in production of clean fuels' able to produce more than 70% of its gasoline as reformulated or oxygenated fuel containing MTBE")).

5. *See* Lyondell 10–K at 23.

6. *See id.*

7. *See id.* at 1.

8. *See* Pl. LCR MA Mem. at 1–2 (citing Lyondell website, *available at* www.lyondell.com/html/lyondell/who_we_are.shtml).

9. *See* Lyondell 10–K at 144.

10. *See id.*

11. *See* Equistar Chemicals, LP Form 10–K for the fiscal year ended December 31, 2003 ("Equistar 10–K") at 3, Ex. A to Plaintiffs' Response to Defendant Equistar Chemicals, LP's Rule 12(b)(2) motion to dismiss the New Hampshire cases ("Pl. Equistar NH Mem."). The relationship between LCR, Equistar, and Lyondell is discussed in greater detail below.

12. *See* Plaintiff City of New York's Memorandum of Law in Opposition to Defendant Lyondell–Citgo Refining LP's Motion to Dismiss for Lack of Personal Jurisdiction Under Fed. R.Civ.P. 12(b)(2) ("Pl. Equistar NYC Mem.") at 8 (citing Lyondell 10–K at 23).

13. *See* Citgo Petroleum Corporation Form 10–K for the fiscal year ended December 31, 2003 ("Citgo 10–K") at 10–11, Ex. B to Pl. LCR MA Mem.

14. *See* Pl. LCR MA Mem. at 3 n.5 (citing Citgo website, *available at* www.citgo.c om/CommunityInvolvement/SafetyEnvironment.jsp). *See also id.* at n.4 (citing Citgo Locator, *available at* www.citgo.com).

## B. Equistar

Equistar is a wholly-owned subsidiary of Lyondell.[15] It is one of the world's largest chemical producers, generating revenues of $6.5 billion and amassing assets of $5 billion in 2003.[16] Equistar has sixteen manufacturing facilities that produce various chemicals "used in countless items that make everyday living safer, healthier and more convenient."[17] It is North America's second largest producer of ethylene, the world's most widely used petrochemical, and the third largest producer of polyethylene in North America.[18] In addition, Equistar produces 284 million gallons of MTBE per year (or approximately 18,500 barrels each day).[19] Plaintiffs estimate that from 1998 to 2003, Equistar generated revenue amounting to approximately $124,000,000 in Connecticut; $513,000,000 in Indiana; $311,000,000 in Kansas; $205,000,000 in Massachusetts; $65,000,000 in New Hampshire, $346,320,000 in New York; $28,000,000 in Vermont; $451,000,000 in Virginia; and $92,000,000 in West Virginia [20]—an aggregate of approximately $2.1 billion from direct sales of various products to the nine states where it now contests jurisdiction.[21]

Pursuant to a "Shared Services Agreement," Equistar shares many business services with the other members of the Lyondell enterprise, such as engineering, research and development, information technology, human resources, sales and marketing, raw material supplies, physical office space, and facility services.[22] In addition, the companies are also managed by a single team in which all of Equistar's executive officers are also officers of Lyondell, and Equistar's chief executive officer is designated by Lyondell.[23]

**15.** Pl. Equistar NH Mem. at 1–2 (citing Equistar and Lyondell websites, *available at* www.equistar.com and www.lyondell.com, respectively).

**16.** *See* Equistar 10–K at 1.

**17.** Pl. Equistar NH Mem. at 7 (quoting Equistar website, *available at* www.equistar.com/html/about/index.htm).

**18.** *See id.* at 1.

**19.** *See id.*

**20.** *See* Plaintiffs' Response to Defendant Equistar Chemicals, LP's Rule 12(b)(2) Motion to Dismiss the Connecticut Cases ("Pl. Equistar CT Mem.") at 6 (citing Affidavit of Karen Bowling, Lyondell Business Manager ("Aff.") ¶ 10); Plaintiffs' Response to Defendant Equistar Chemicals, LP's Rule 12(b)(2) Motion to Dismiss the Indiana Cases ("Pl. Equistar IN Mem.") at 7 (citing Aff. ¶ 10); Plaintiffs' Response to Defendant Equistar Chemicals, LP's Rule 12(b)(2) Motion to Dismiss the Kansas Cases ("Pl. Equistar KS Mem.") at 6 (citing Aff. ¶ 10); Plaintiffs' Response to Defendant Equistar Chemicals, LP's Rule 12(b)(2) Motion to Dismiss the Massachusetts Cases ("Pl. Equistar MA Mem.") at 6 (citing Aff. ¶ 10); Pl. Equistar NH Mem. at 7 (citing Aff. ¶ 10); Plaintiff City of New York's Memorandum of Law in Opposition to Defendant Equistar Chemicals, LP's Motion to Dismiss for Lack of Personal Jurisdiction Under Fed.R.Civ.P. 12(b)(2) ("Pl. Equistar NYC Mem.") at 2 (citing Aff. ¶ 10); Plaintiffs' Response to Defendant Equistar Chemicals, LP's Rule 12(b)(2) Motion to Dismiss the Vermont Cases ("Pl. Equistar VT Mem.") at 7 (citing Aff. ¶ 10); Plaintiffs' Response to Defendant Equistar Chemicals, LP's Rule 12(b)(2) Motion to Dismiss the Virginia Cases ("Pl. Equistar VA Mem.") at 6 (citing Aff. ¶ 10); Plaintiffs' Response to Defendant Equistar Chemicals, LP's Rule 12(b)(2) Motion to Dismiss the West Virginia Cases ("Pl. Equistar W.VA Mem.") at 6 (citing Aff. ¶ 10).

**21.** *See* Pl. Equistar NH Mem. at 1 n.4 (deriving figures from Aff.).

**22.** *See* Equistar 10–K at 82.

**23.** *See* Pl. Equistar NH Mem. at 2 (citing Equistar and Lyondell websites, *available at* www.equistar.com/html/about/Leadership.htm and www.lyondell.com/html/lyondell/leadership.shtml, respectively).

As noted above, the companies comprising Lyondell's enterprise also cooperate to produce and market MTBE and MTBE-containing gasoline. Using technology licensed from Lyondell, Equistar produces MTBE at two facilities located in Texas: Channelview and Chocolate Bayou.[24] Output from these facilities, other than one Channelview facility, is sold to Lyondell for resale.[25] Lyondell supplies MTBE to refiners, such as ExxonMobil, that operate on a nationwide level.[26] The remaining facility produces approximately one-third of Equistar's MTBE, and is sold to LCR for blending into gasoline that is then distributed through Citgo's nationwide distribution network.[27] Equistar's MTBE also reaches the national market through sales to other refiners with broad distribution.[28]

## III. LEGAL STANDARD

■ A court must dismiss an action against any defendant over whom it lacks personal jurisdiction.[29] On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing, by a preponderance of the evidence, that the court has jurisdiction over the defendant.[30] "Where, as here, a court relies on pleadings and affidavits, rather than a full blown evidentiary hearing, the plaintiff need only make a prima facie showing that the court possesses personal jurisdiction over the defendant."[31] "A plaintiff can make this showing through [its] own affidavits and supporting materials, containing [a] [good faith] averment of facts that, if credited ..., would suffice to establish jurisdiction over the defendant."[32] When the issue is addressed on affidavits, a court must construe all allegations in the light most favorable to the plaintiff and resolve all doubts in the plaintiff's favor.[33] Thus, a court accepts as true all of the plaintiff's averments of jurisdictional facts.[34]

■ The determination of whether a federal court has personal jurisdiction over a defendant is a two-part inquiry. *First*, a court must evaluate whether jurisdiction is proper under the state's long-arm statute. *Second*, it must determine whether the

24. *See* Equistar 10–K at 5.

25. *See id.*

26. *See* Pl. Equistar NH Mem. at 4–5 (citing *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, No. M21–88, MDL 1358, 2005 WL 106936, at *33 (S.D.N.Y. Jan. 18, 2005)) (*"MTBE I"*).

27. *See id.* at 5 (citing Lyondell 10–K at 3, 5).

28. *See id.* at 4 (citing Lyondell 10–K at 1–2, 5).

29. *See* Fed.R.Civ.P. 12(b)(2). *See also E–Z Bowz, L.L.C., v. Professional Prod. Research Co.*, No. 00 Civ. 8670, 2003 WL 22064259, at *4 (S.D.N.Y. Sept. 5, 2003).

30. *See In re Ski Train Fire in Kaprun, Austria on November 11, 2000*, 343 F.Supp.2d 208, 213 (S.D.N.Y.2004) (citing *Kernan v. Kurz–Hastings, Inc.*, 175 F.3d 236, 240 (2d Cir. 1999)).

31. *Distefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir.2001). *Accord Jazini v. Nissan Motor Co.*, 148 F.3d 181, 184 (2d Cir.1998) ("[P]rior to discovery, a plaintiff challenged by a jurisdiction testing motion may defeat the motion by pleading in good faith ... legally sufficient allegations of jurisdiction, i.e., by making a *prima facie* showing of jurisdiction.").

32. *Whitaker v. American Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir.2001) (quotation marks and citation omitted).

33. *See id.*

34. *See Kernan*, 175 F.3d at 240. *See also In re Ski Train Fire*, 343 F.Supp.2d at 213 ("[A] court may consider materials outside the pleadings, but must credit the plaintiff's averments of jurisdictional facts as true.").

exercise of personal jurisdiction ·comports with the requirements of due process.[35] Because several of the forum states permit the exercise of personal jurisdiction to the full extent of the Due Process Clause,[36] I address the constitutional question first.

## IV. DISCUSSION

### A. The Assertion of Jurisdiction over Both Defendants in Each Forum State Comports with the Requirements of Due Process

■ The Due Process Clause of the Fourteenth Amendment requires that the exercise of personal jurisdiction over a nonresident defendant comports with "traditional notions of fair play and substantial justice."[37] "Thus, at the most general level, the due process nexus analysis requires that we ask whether an individual's connections with a State are substantial enough to legitimate the State's exercise of power over him."[38] In the Second Circuit, the due process analysis consists of two components: the "minimum contacts" test and the "reasonableness" inquiry.[39]

■ "In determining whether minimum contacts exist, the court considers 'the relationship among the defendant, the forum, and the litigation.'"[40] The minimum·contacts between the defendant and the forum state· may give rise to either specific or general jurisdiction. In order to justify specific jurisdiction, the plaintiff must show that the claim arises from, or relates to, the defendant's contacts with the forum state.[41] As I explained in my January 18 Opinion and Order ("Jan. 18 Opinion"), a corporation can establish minimum contacts with every state by deliberately "priming" and "pumping" the nationwide market with its products.[42] "A state may assert general jurisdiction—i.e., jurisdiction irrespective of whether the claim arises from or relates to the defendant's forum contacts—only where these contacts are 'continuous and systematic.'"[43]

■ The second part of the jurisdictional analysis inquires whether it is reasonable under the circumstances of the particular case for a state to assert jurisdiction over the defendant.[44] In evaluating reasonableness, courts are to consider five factors:

(1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's in-

---

**35.** See *Whitaker,* 261 F.3d at 208; *Kernan,* 175 F.3d at 240.

**36.** See *infra* notes 64–71 and accompanying text.

**37.** *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

**38.** *Quill Corp. v. North Dakota,* 504 U.S. 298, 312, 112 S.Ct. 1904, 119 L.Ed.2d 91 (1992).

**39.** *Bank Brussels Lambert v. Fiddler Gonzalez,* 305 F.3d 120, 127 (2d Cir.2002) (quoting *Metropolitan Life Ins. Co. v. Robertson–Ceco Corp.,* 84 F.3d 560, 567 (2d Cir.1996)).

**40.** *Kernan,* 175 F.3d at 242 (quoting *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 775, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984)).

**41.** See *id.; Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984).

**42.** *MTBE I,* 2005 WL 106936, at *9.

**43.** *Bank Brussels Lambert,* 305 F.3d at 127. *Accord Helicopteros Nacionales,* 466 U.S. at 415–16, 104 S.Ct. 1868; *Chew v. Dietrich,* 143 F.3d 24, 29 (2d .Cir.1998) ("Where the defendant's contacts with the jurisdiction ... are more substantial ... it is not unreasonable to say that the defendant is subject to personal jurisdiction even though the acts within the state are not the proximate cause of plaintiff's injury."). ·

**44.** See *Metropolitan Life,* 84 F.3d at 568 (citing *International Shoe,* 326 U.S. at 316, 66 S.Ct. 154).

terest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies.[45]

"Where a plaintiff makes the threshold showing of the minimum contacts required for the first test, a defendant must present 'a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'"[46]

### 1. Minimum Contacts

#### a. LCR

 LCR is subject to personal jurisdiction in each of the forum states because it supplies MTBE-containing gasoline to the national market. LCR argues that the forum states lack jurisdiction because LCR sells its gasoline to only one buyer. However, that buyer is Citgo, whose nationwide distribution network reaches every one of the relevant states. By selling large volumes of MTBE-containing gasoline to a nationwide distributor, LCR expected, or reasonably should have expected, its product to reach all of the states in the nation. Thus, LCR purposefully availed itself of the privilege of doing business in the forum states, such that it could reasonably foresee being haled into court in those states.[47]

LCR also maintains "continuous and systematic" contacts with the forum states sufficient to support the exercise of general jurisdiction. As noted above, LCR derives substantial revenue from the production and sale of other chemicals throughout the country in addition to MTBE-containing gasoline. The production, sale, and marketing of these chemicals is accomplished through a collaboration of members of the Lyondell enterprise.[48] In my Jan. 18 Opinion, I noted that the sale of chemicals nationwide provided "continuous and systematic" contact with the forum states, which would permit general jurisdiction over Lyondell.[49] Similarly, the same "continuous and systematic" contact between LCR and the forum states is established by its efforts to sell its products in a national stream of commerce. Thus, LCR is subject to general jurisdiction in each of the forum states.[50]

---

**45.** *Bank Brussels Lambert,* 305 F.3d at 129 (quotation marks and citation omitted).

**46.** *Id.* (quoting *Metropolitan Life,* 84 F.3d at 568).

**47.** *See Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (an essential element in the jurisdictional inquiry is whether there is "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws"); *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980) (introducing product into stream of commerce may serve as basis for personal jurisdiction if the sale of that product "is not simply an isolated occurrence, but arises from the efforts of the manufacturer ... to serve, directly or indirectly, the market for its product"); *World–Wide Volkswagen Corp.,* 444

U.S. at 297, 100 S.Ct. 559 ("When a corporation purposely avails itself of the privilege of conducting activities within the forum State, it has clear notice that it is subject to suit there ....") (quotation marks and citations omitted).

**48.** *See* Lyondell 10–K at 24 (stating that Citgo serves as LCR's sole agent to market paraxylene and orthoxylene produced by LCR and that Equistar buys LCR's benzene and serves as LCR's sole agent to market toluene produced by LCR).

**49.** *See MTBE I,* 2005 WL 106936, at *10 n. 106.

**50.** LCR and Equistar also argue that they are not subject to personal jurisdiction because customers take title to their products outside of the forum states. This argument is unavailing because the location where title is

### b. Equistar

█ By the same reasoning, Equistar has sufficient minimum contacts with the nine forum states where it contests jurisdiction.[51] As discussed above, plaintiffs in the forum states allege that Equistar is a significant participant in the MTBE market. Equistar's MTBE is produced in Texas and then reaches the forum states through arrangements with members of the Lyondell enterprise and through sales to other refiners with nationwide distribution. For instance, Equistar sells MTBE to LCR and Lyondell, who in turn supply MTBE and MTBE-containing gasoline to Citgo and ExxonMobil, respectively. Additionally, Equistar must have been aware of the nationwide distribution scheme used by Lyondell and LCR, given its close corporate relationship with these members of the Lyondell enterprise.[52] Equistar's deliberate participation in the national market for MTBE shows its intent to serve the markets of all the forum states.[53]

Plaintiffs have also made the required prima facie showing to support a finding of general jurisdiction over Equistar in each of the forum states. From 1998 to 2003, Equistar earned approximately $2.1 billion from direct sales to the relevant forum states.[54] Even if the revenue from each state comprises only a small fraction of Equistar's total revenue, that is not dispositive.[55] The regular sale of its products to customers in each forum state is the type of "continuous and systematic" contact sufficient for general jurisdiction.[56] In addition, Equistar maintains a constant sales presence in Connecticut, Indiana, and Kansas by employing at least one sales representative based in each of those states.[57]

### 2. Reasonableness

An assessment of the Second Circuit's five reasonableness factors favors the exercise of personal jurisdiction. LCR and Equistar have not shown, nor have they asserted, that they will bear any unique burden litigating in any of the states where either contests jurisdiction.[58]

transferred does not undermine the minimum contacts LCR and Equistar have with the forum states. *See In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, M21–88, MDL 1358, 2005 WL 1529594, at *3 (S.D.N.Y. June 28, 2005) (*"MTBE II"*) (rejecting same argument in deciding Lyondell's motion to dismiss for lack of personal jurisdiction in the New Hampshire cases).

**51.** *See supra* Part IV.A.1.a.

**52.** *See Cromer Finance, Ltd. v. Berger*, 137 F.Supp.2d 452, 478–79 (S.D.N.Y.2001) (holding jurisdiction proper based on "intertwined relationship" between the companies and that Bermuda defendants "effectively function[ed] as a single entity"); *Empire Indus., Inc. v. Kaplan*, 695 So.2d 919, 921 (Fla.Dist.Ct.App. 1997) (finding business venture to develop and market toy product sufficient to confer jurisdiction over a nonresident defendant).

**53.** *Electro Med. Equip. Ltd v. Hamilton Med. AG*, No. Civ. A 99–579, 1999 WL 1073636, at *6 (E.D.Pa. Nov. 16, 1999) (Pennsylvania had jurisdiction over a Swiss company based on

company's distribution of its product through its United States subsidiary).

**54.** *See supra* notes 20–21 and accompanying text.

**55.** *See Divicino v. Polaris Indus.*, 129 F.Supp.2d 425, 434 (D.Conn.2001) (noting that courts have found sufficient contacts even where only a very small percentage of defendant's sales are to customers in that state).

**56.** *See R & J Tool, Inc. v. Manchester Tool Co.*, No. Civ. 99–242–M, 2001 WL 1636435, at *4 (D.N.H. Apr. 21, 2001) (asserting jurisdiction over defendant based on its "regular distribution channel through which its products are marketed and sold").

**57.** *See* Pl. Equistar CT Mem. at 6–7 (citing Aff. ¶ 6); Pl. Equistar IN Mem. at 7 (citing Aff. ¶ 6); Pl. Equistar KS Mem. at 6 (citing Aff. ¶ 6).

**58.** *See MTBE I*, 2005 WL 106936, at *10 (finding that Lyondell, a chemical company,

Even if forcing the defendant to litigate in a forum relatively distant from its home base were found to be a burden, the argument would provide defendant only weak support, if any, because the conveniences of modern communication and transportation ease what would have been a serious burden only a few decades ago.[59]

On the other hand, the interests of both plaintiffs and the forum states make jurisdiction over LCR and Equistar reasonable. Because "this litigation implicates each of the states' most precious natural resource—water, ... each of the states has an unquestionable interest in adjudicating the claims." [60] Plaintiffs in this case have the same interest as that of the forum states because they are cities, municipalities, and other entities that provide citizens of those states with water. In addition, each state has an interest in providing citizens redress for injuries caused within its borders by an allegedly defective product—in this case MTBE-containing gasoline.[61] In evaluating the factor concerning the efficient administration of justice, courts generally consider the location of witnesses and evidence.[62] The wit-

nesses and evidence concerning groundwater contamination will be located in the forum states where water has been contaminated.[63] Lastly, there is no indication that any substantive social policy will be advanced or impeded by the exercise of jurisdiction over LCR or Equistar by the forum states.

In sum, this is not the "exceptional situation" where the exercise of personal jurisdiction would be unreasonable.[64] The first four factors tip in plaintiffs' favor while the fifth factor is neutral. Therefore, the forum states may exercise jurisdiction over LCR and Equistar consistent with due process.

## B. State Law Permits the Exercise of Personal Jurisdiction over LCR and Equistar

### 1. Long Arm Statutes Coextensive with Due Process Clause

The second part of the jurisdictional inquiry requires the Court to determine whether the exercise of personal jurisdiction accords with state law. The long-arm statutes in several forum states extend personal jurisdiction to the limits of the federal Due Process Clause. These include: Illinois,[65] Indiana,[66] Iowa,[67] Louisi-

---

would not bear any unique burden litigating in any of the forum states because it is a national corporation).

**59.** *Bank Brussels Lambert*, 305 F.3d at 129–30 (quotation marks and citation omitted).

**60.** *MTBE I*, 2005 WL 106936, at *10 (quotation marks and citation omitted).

**61.** *See, e.g., Kernan,* 175 F.3d at 244 (forum state had interest in providing compensation to a resident for injuries from a defective stamping press).

**62.** *See id.* at 245.

**63.** *See MTBE I*, 2005 WL 106936, at *10.

**64.** *See Metropolitan Life,* 84 F.3d at 575 ("[D]ismissals resulting from the application of the reasonableness test should be few and far between").

**65.** *See* 735 Ill. Comp. Stat. 5/2–209(c) ("A court may also exercise jurisdiction on any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States."); *Zazove v. Pelikan, Inc.,* 326 Ill.App.3d 798, 260 Ill.Dec. 412, 761 N.E.2d 256, 259–60 (2001) (following the enactment of subsection (c), no other jurisdictional inquiry necessary as long as the contacts between the defendant and Illinois are sufficient to satisfy the requirements of due process). *See also Hyatt Int'l Corp. v. Coco,* 302 F.3d 707, 714 (7th Cir.2002) (same).

**66.** *See* Ind. Trial. R. 4.4(A) ("[A] court of this state may exercise jurisdiction on any basis not inconsistent with the Constitutions of this state or the United States."); *Richards & O'Neil, LLP v. Conk,* 774 N.E.2d 540, 550 n. 6 (Ind.Ct.App.2002) (noting that Indiana long-arm jurisdiction has expanded to the full ex-

ana,[68] New Hampshire,[69] New Jersey,[70] Pennsylvania,[71] and Vermont.[72] Because the exercise of personal jurisdiction over LCR and Equistar in these states comports with the requirements of due process, it also falls within the scope of each of these states' laws.[73] For the reasons discussed below, LCR and Equistar are also subject to personal jurisdiction in the remaining forum states.[74]

tent of the law). *See also Wilson v. Humphreys (Cayman) Ltd.*, 916 F.2d 1239, 1243 (7th Cir.1990) (same).

67. *See* Iowa Code Ann. R. 1.306 (2005) (foreign defendant "that shall have the necessary minimum contact with the state of Iowa shall be subject to the jurisdiction of the courts of this state, and the courts of this state shall hold such corporation, individual, personal representative, partnership or association amenable to suit in Iowa in every case not contrary to the provisions of the Constitution of the United States"); *State ex rel. Miller v. Grodzinsky*, 571 N.W.2d 1, 3 (Iowa 1997) (Iowa long-arm statute provides for the broadest expanse of personal jurisdiction consistent with due process).

68. *See* La.Rev.Stat. § 13:3201 (2005) ("[A] court of this state may exercise personal jurisdiction over a nonresident on any basis consistent with the constitution of this state and of the Constitution of the United States."); *Cohen v. Cohen*, 635 So.2d 1293, 1295 (La.Ct. App.1994) (finding that "the sole inquiry for determining whether personal jurisdiction can be exercised over a nonresident is whether the assertion of jurisdiction complies with constitutional due process").

69. *See* N.H.Rev.Stat. § 510:4 (2004); *Lyme Timber Co. v. DSF Investors LLC*, 150 N.H. 557, 842 A.2d 115, 118 (2004) (construing long-arm statute "as permitting the exercise of jurisdiction to the extent permissible under the Federal Due Process clause.").

70. *See* N.J. Ct. R. 4:4–4(b)(1) (2005); *Avdel Corp. v. Mecure*, 58 N.J. 264, 268, 277 A.2d 207 (1971) ("Our long-arm rule, unlike statutes in some other states, permits service on nonresident defendants subject only to 'due process of law.' ").

71. *See* 42 Pa. Consol. Stat. Ann. § 5322(b) (2005) ("In addition to the provisions of subsection (a) the jurisdiction of the tribunals of this Commonwealth shall extend to all per-

sons ... to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States."). *See also Kim v. Kim*, 324 F.Supp.2d 628, 637 (E.D.Pa.2004) ("Pennsylvania's long-arm statute authorizes the exercise of personal jurisdiction to the fullest extent permitted under the Due Process Clause of the Fourteenth Amendment.").

72. *See* Vt. Stat. § 913(B); *Dall v. Kaylor*, 163 Vt. 274, 658 A.2d 78, 79 (1995) (Vermont long-arm statute "confers jurisdiction over nonresident defendants to the full extent permitted by the Due Process Clause"); *Northern Aircraft, Inc. v. Reed*, 154 Vt. 36, 40, 572 A.2d 1382 (1990) (same).

73. *See supra* Part IV.A.

74. Some courts in Virginia have interpreted the states' long-arm statute as extending the jurisdictional analysis to the limits of the Due Process Clause. Thus, under that interpretation of the long arm statute, jurisdiction over LCR and Equistar in Virginia is proper. *See Cordova v. Alper*, No. 127502, 2004 WL 516230, at *16 (Va. Cir. Ct. Feb. 24, 2004) ("Virginia law is equally settled that the purpose of Virginia's long-arm statute is to assert jurisdiction over non-residents who engage in some purposeful activity in this state to the extent permissible under the due process clause.") (quotation marks and citation omitted); *see also Reynolds & Reynolds Holdings, Inc. v. Data Supplies, Inc.*, 301 F.Supp.2d 545, 550 (E.D.Va.2004). However, other courts have held that the proper analysis considers both the statute and the due process requirements. *See Sutherland v. Robby Thruston Carpentry, Inc.*, No. LR–2041–3, 2005 WL 545543, at *1–3 (Va. Cir. Ct. Mar. 4, 2005) (analyzing enumerated provisions in long-arm statute). For completeness, the Virginia long-arm statute is analyzed below.

### 2. Causing Tortious Injury Within the State by Acts or Omissions Outside the State

The long-arm statutes of Florida, Kansas, Massachusetts, New York, Virginia, and West Virginia each permit the exercise of jurisdiction over a non-resident defendant if the defendant caused tortious injury within the state by acts or omissions outside the state, provided that one or more additional conditions are met.[75] Plaintiffs allege that defendants, including LCR and Equistar, committed tortious acts by intentionally or negligently manufacturing, marketing, distributing, and/or selling MTBE throughout the United States, without warning of its harmful environmental and health effects.[76] These acts and omissions by defendants allegedly caused injury in the relevant forum states—namely, the contamination of groundwater with MTBE—which gives rise to plaintiffs' causes of action.[77] Plaintiffs' allegations therefore satisfy the "causing tortious injury" element of the six long-arm statutes. However, other statutory conditions must still be met for the Court to exercise jurisdiction over both defendants.

### a. Florida and Kansas

In addition to causing tortious injury, Florida and Kansas require that at or about the time of injury, "[p]roducts, materials, or things processed, serviced, or manufactured by the defendant anywhere were used or consumed within [Florida and Kansas] in the ordinary course of commerce, trade, or use."[78]

■■■ LCR and Equistar are subject to personal jurisdiction because at the time of injury, their products were being used or consumed in Florida and Kansas. It is reasonable to assume that LCR's gasoline reached the Florida and Kansas markets because LCR sells "substantially all" of its gasoline to Citgo, which then distributes the product through its nationwide network. Equistar also sells its product to intermediaries—LCR and Lyondell—which supply the Kansas market. For instance, Lyondell supplies Exxon Mobil with MTBE-containing gasoline and admits selling MTBE directly to customers in Kansas.[79] That other entities marketed and distributed defendants' products is not determinative because both defendants could reasonably expect their MTBE and MTBE-containing gasoline to be used in

**75.** See Fla. Stat. § 48.193(1)(f); Kan. Stat. § 60–308(b)(7); Mass. Gen. Laws ch. 223A § 3(d); N.Y. C.P.L.R. § 302(a)(3); Va.Code Ann. § 8.01–328.1(A)(4); W. Va.Code § 56–3–33(a)(4). The additional conditions are discussed below.

**76.** See Escambia County Utilities Authority Fifth Amended Complaint ("Fla. Compl.") ¶¶ 1, 78, 91–94, 125–126, 141, 150, 156–165; City of Park City Fourth Amended Complaint ("Kan. Compl.") ¶¶ 1, 77–79, 92–96, 127, 143, 152, 158–165; Town of Duxbury Fifth Amended Complaint ("Mass. Compl.") ¶¶ 1, 136–138, 151–155, 185, 201, 216–224; Long Island Water Corp. Fourth Amended Complaint ("NY Compl.") ¶¶ 1–2, 114–116, 127–133, 163, 194–200; City of New York Second Amended Complaint ("NYC Compl.") ¶¶ 3, 63, 69–71, 75–76; Patrick County School Board Fifth Amended Complaint ("Va.

Compl.") ¶¶ 1, 81–83, 96–100, 140, 171–179; Town of Matoaka Second Amended Complaint ("W.Va. Compl.") ¶¶ 1, 79–81, 94–98, 104, 128, 153, 159–167.

**77.** See Fla. Compl. ¶¶ 188–240; Kan. Compl. ¶¶ 188–244; Mass. Compl. ¶¶ 249–308; NY Compl. ¶¶ 232–287; NYC Compl. ¶¶ 1, 63, 124–184; Va. Compl. ¶¶ 193–247; W. Va. Compl. ¶¶ 191–250.

**78.** Fla. Stat. § 48.193(1)(f)(2). Although the wording of this provision in the Kansas long-arm statute varies slightly from that of Florida, substantively the two provisions are identical. See Kan. Stat. § 60–308(b)(7) (omitting the word "commerce").

**79.** See In re MTBE I, 2005 WL 106936, at *2, 15.

any state in which Citgo or Lyondell operate.[80] Furthermore, plaintiffs estimate that from 1998 to 2003, Equistar generated approximately $311,000,000 in revenue from direct sales of its other products in Kansas.[81] Therefore, the exercise of personal jurisdiction over LCR and Equistar in the Florida and Kansas cases comports with state law.[82]

### b. Massachusetts, Virginia, and West Virginia

The long-arm statutes of Massachusetts, Virginia, and West Virginia all confer jurisdiction over a foreign defendant causing injury in the state by tortious acts or omissions outside the state "if [it][1] regularly does or solicits business, or [2] engages in any other persistent course of conduct, or [3] derives substantial revenue from goods used or consumed or services rendered" in the state.[83]

 Jurisdiction over LCR and Equistar is permitted under these long-arm statutes because they both satisfy the "substantial revenue" prong. In determining whether a defendant derived substantial revenue from the sale of its products in a state, courts generally do not set a minimum dollar amount of revenue. Instead, the substantial revenue prong is satisfied by showing that the defendant derived some financial benefit, such as the sale of its products on a regular basis.[84] Clearly, LCR has benefitted financially from Citgo's sale of gasoline across the country on a regular basis. In addition, Plaintiffs estimate that from 1998 to 2003, Equistar generated revenues of $205,000,000 in Massachusetts, $451,000,000 in Virginia, and $92,000,000 in West Virginia from sales of its products.[85] These amounts are

---

**80.** *See McHugh v. Kenyon,* 547 So.2d 318, 319 (Fla.Dist.Ct.App.1989) (holding that even if a nonresident defendant has no business or distributors in Florida, the placement of its products into the stream of commerce with the reasonable expectation that large numbers will be purchased in Florida suffices to come within the long-arm statute); *Ling v. Jan's Liquors,* 237 Kan. 629, 703 P.2d 731, 733 (1985) (the intent of the legislature "was to grant in personam jurisdiction to the courts of this state over those who engage in the manufacture, sale, or servicing of products if they receive or can anticipate some direct or indirect financial benefit from the sale, trade, use or servicing of their products within [Kansas]."). *See also Kaplan v. DaimlerChrysler, A.G.,* 99 F.Supp.2d 1348, 1353 (M.D.Fla. 2000) (finding that a nationwide marketing scheme between two entities formed a sufficient connection between them such that distribution of DaimlerChrysler's product by MBUSA did not insulate DaimlerChrysler from Florida's jurisdiction).

**81.** *See supra* note 20.

**82.** Although it was named as a defendant in *Escambia County Utilities Authority v. Amerada Hess,* 04 Civ. 1722, Equistar did not move to dismiss in the Florida case.

**83.** Mass. Gen. Laws ch. 223A § 3(d). The long-arm statutes of Massachusetts, Virginia, and West Virginia use substantially similar language. *See* Va.Code Ann. § 8.01–328.1(a)(4); W. Va.Code § 56–3–33(a)(4).

**84.** *See Commonwealth v. Philip Morris, Inc.,* No. 957378J, 1998 WL 1181992, at *6 (Mass.Super.Ct. Mar. 20, 1998) (noting that details of channels from which corporate funds are received is not necessary; a manufacturer derives substantial revenue if it benefitted from sales in Massachusetts); *Sutherland,* 2005 WL 545543, at *3 (finding that an average of $77,200 worth of sales during the relevant years was substantial revenue, even though it amounted to only 0.05 of defendant's total revenue). *See also Hinzman v. Superior Toyota, Inc.,* 660 F.Supp. 401, 402 (N.D.W.Va.1987) (finding the substantial revenue requirement satisfied by defendant's sales of 127 cars to West Virginia dealers over the course of four years); *LG Elecs., Inc. v. Asustek Computers,* 126 F.Supp.2d 414, 421 (E.D.Va.2000) (inferring that defendant derived substantial revenue from sales to Virginia because they were ongoing and continuous).

**85.** *See supra* note 20.

substantial and are sufficient to confer jurisdiction over Equistar. Thus, LCR and Equistar are subject to jurisdiction in Massachusetts, Virginia, and West Virginia.

### c. New York

New York's long-arm statute allows the assertion of jurisdiction over a foreign defendant who causes injury in the state by tortious acts outside the state "if [it] . . . expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce." [86] The foreseeability test is objective and relates to "forum consequences generally, and not to the specific event which produced the injury within the state." [87] A determination of what is "substantial" may be based on either the absolute amount or the percentage of a defendant's income derived from interstate commerce.[88] This requirement ensures that the defendant is not a purely local business unable to defend a suit brought against it in New York.[89]

■ Equistar produces 18,500 million gallons of MTBE per day, while LCR sells 120,000 gallons of MTBE-containing gasoline per day.[90] Because Equistar sells to Lyondell and LCR, and LCR sells "substantially all" of its gasoline to Citgo, both defendants expected or should have reasonably expected their products to reach and have consequences in New York.[91] This is especially so given that LCR, Equistar, Lyondell, and Citgo are all part of the same corporate enterprise. Furthermore, both defendants derived "substantial revenue" from interstate and international sales. In 2003, LCR and Equistar generated revenue of approximately $4.2 billion and $6.5 billion, respectively.[92] Accordingly, New York may exercise personal jurisdiction over LCR and Equistar.

### 3. Reasonable Expectation

Connecticut's long-arm statute permits personal jurisdiction over a foreign corporation for any cause of action arising

> out of the production, manufacture or distribution of goods by such corporation

86. N.Y. C.P.L.R. § 302(a)(3)(ii).

87. *Fantis Foods, Inc. v. Standard Importing Co.*, 49 N.Y.2d 317, 327 n. 4, 425 N.Y.S.2d 783, 402 N.E.2d 122 (1980). *Accord LaMarca v. Pak–Mor Mfg. Co.*, 95 N.Y.2d 210, 215, 713 N.Y.S.2d 304, 735 N.E.2d 883 (2000) ("[T]he defendant need not foresee the specific event that produced the alleged injury.").

88. *See Allen v. Canadian Gen. Elec. Co.*, 65 A.D.2d 39, 42, 410 N.Y.S.2d 707 (3d Dep't 1978), *aff'd mem.*, 50 N.Y.2d 935, 431 N.Y.S.2d 526, 409 N.E.2d 998 (1980).

89. *See Ingraham v. Carroll*, 90 N.Y.2d 592, 599, 665 N.Y.S.2d 10, 687 N.E.2d 1293 (1997). *See also In re Sumitomo Copper Litig.*, 120 F.Supp.2d 328, 341 (S.D.N.Y.2000) (noting that New York's long-arm statute precludes the exercise of jurisdiction over non-domiciliaries who might cause direct foreseeable injury within the state but whose business operations are of local character); *Hammond v. Alpha 1 Biomedicals, Inc.*, No. 91 Civ. 1477, 1992 WL 44365, at *4 (N.D.N.Y. Mar. 2, 1992) (requiring that revenues derive from sales of goods or services in interstate commerce).

90. *See supra* notes 12, 19.

91. *See Kernan*, 175 F.3d at 242 (finding that defendant's agreement with a nationwide distributor made it reasonably foreseeable that its products would end up in New York); *see also Boris v. Bock Water Heaters, Inc.*, 3 Misc.3d 835, 775 N.Y.S.2d 452, 455 (Sup.Ct. Suffolk Co.2004) (finding that distribution of defendant's product nationwide made it reasonable for defendant to expect a defect in a product would have consequences in New York).

92. *See supra* notes 3, 16.

with the reasonable expectation that such goods are to be used or consumed in th[e] state and are so used or consumed, regardless of how or where the goods were produced, manufactured, marketed or sold or whether or not through the medium of independent contractors or dealers. . . . [93]

The plaintiff does not need to show that the offending goods were sold in Connecticut.[94] Instead, jurisdiction over a nonresident manufacturer is proper if it could have reasonably anticipated facing litigation in Connecticut resulting from its product distribution.[95] A "reasonable expectation" may even arise through indirect marketing and distribution channels.[96]

 Jurisdiction over LCR and Equistar is proper under Connecticut's long-arm statute. Equistar makes MTBE at its sixteen manufacturing facilities, while LCR blends MTBE into gasoline at its refinery in Houston, Texas. As previously discussed, Equistar sells its products to Lyondell and LCR, which then distribute the products nationwide through companies, such as Exxon Mobil and Citgo. Having contracted with Citgo and knowing of Lyondell's distribution scheme, both defendants had a reasonable expectation that their products would be consumed in every state where Exxon Mobil and Citgo do business, including Connecticut.[97] Plain-

tiffs' causes of action arise out of defendants' manufacture and distribution of products because MTBE allegedly contaminated the groundwater in Connecticut.[98] Thus, Connecticut may exercise personal jurisdiction over LCR and Equistar based on this "reasonable expectation" ground.

## V. CONCLUSION

In conclusion, the exercise of personal jurisdiction over LCR and Equistar accords with both state and federal law. For the reasons set forth above, LCR and Equistar's Rule 12(b)(2) motions to dismiss are denied. The Clerk of the Court is directed to close these motions. A conference is scheduled for September 9, 2005, at 10:00 a.m. in Courtroom 15C.

SO ORDERED.

---

93. Conn. Gen.Stat. § 33–929(f)(3)–(4) (2005).

94. *See Divicino,* 129 F.Supp.2d at 430.

95. *See id.*

96. *See Goldstein v. Nutrition Now, Inc.,* No. X02CV96015049S, 1999 WL 639938, at *9–10 (Conn.Super.Ct. Aug. 11, 1999) (finding jurisdiction over nonresident manufacturer to be proper because a marketing agreement with a nationwide distributor made it reasonable to anticipate that its defective product would be sold in Connecticut).

97. *See Tomra of N. Am., Inc. v. Environmental Prods. Corp.,* 4 F.Supp.2d 90, 93–94 (D.Conn.

1998) (finding that the sale of products in interstate commerce made it reasonable for defendant to anticipate that some of them would be sold and marketed in Connecticut); *Noon v. Calley and Currier Co.,* No. CV93521514S, 1995 WL 118387, at *3 (Conn.Super.Ct. Mar. 9, 1995) (asserting personal jurisdiction over a Korean manufacturer based on its sales to a nationwide distributor because it was reasonable to infer that defendant knew its products would be used in Connecticut).

98. Conn. Compl. ¶¶ 216–217.