*State v. Atlantic Richfield Company*, No. 340-6-14 Wncv (Teachout, J., January 15, 2015)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

## STATE OF VERMONT

| | |
|---|---|
| **SUPERIOR COURT** | **CIVIL DIVISION** |
| **Washington Unit** | **Docket No. 340-6-14 Wncv** |

**STATE OF VERMONT,**
**Plaintiff**

**v.**

**ATLANTIC RICHFIELD COMPANY, et al.**
**Defendants.**

## DECISION
### Defendant Total Petrochemicals & Refining USA, Inc.'s Motion to Dismiss for lack of Personal Jurisdiction

This matter is before the Court on a Motion to Dismiss for lack of personal jurisdiction filed August 21, 2014 by defendant Total Petrochemicals & Refining USA, Inc. ("TPRI"). Plaintiff State of Vermont opposes the motion. Oral argument was held on the motion on November 13, 2014. At oral argument TPRI was represented by Attorney Amy Parker. The State of Vermont was represented by Assistant Attorney General Gavin J. Boyles.

## Background

This action relates to contamination of Vermont waters by methyl tertiary butyl ether ("MTBE"), a gasoline additive. The State has filed this action against 29 defendants, all of whom allegedly participated in the promotion, marketing, distribution, and/or sale of gasoline containing MTBE in Vermont. Due to its chemical characteristics, MTBE spreads farther through groundwater and is more difficult to remediate than other gasoline constituents. The State seeks remediation and recovery costs under a number of legal theories, including violation of Vermont groundwater and natural resource protection statutes, negligence, strict liability, public and private nuisance, trespass, and civil conspiracy.

In the present motion TPRI seeks to dismiss the state's claims against it for lack of personal jurisdiction. A pretrial motion to dismiss for lack of personal jurisdiction may be decided on the basis of affidavits alone. *Godino v. Cleanthes*, 163 Vt. 237, 239 (1995). The court must determine whether, on the basis of the affidavits, the party opposing the motion has made a "prima facie showing of jurisdiction, or, in other words, [has demonstrated] facts which would support a finding of jurisdiction." *Id.* Both parties have submitted affidavits, establishing the following facts.

TPRI has never refined gasoline, manufactured MTBE, blended MTBE into gasoline, or itself sold, stored, marketed, or advertised gasoline containing MTBE or neat MTBE in Vermont. TPRI also avers that it has no awareness of a third party delivering MTBE gasoline or neat MTBE to Vermont that TPRI refined or manufactured.

TPRI has, however, sold MTBE gasoline and neat MTBE to national distributors. Prior to sale, TPRI refined the gasoline in Texas before shipping it via the Colonial Pipeline to New Jersey, where it is stored and subsequently distributed to the entire northeastern United States, including Vermont. As part of this national gasoline distribution system, gasoline from various refineries is comingled making it practically impossible to determine at the point of distribution or sale what refinery produced any given gallon of gasoline. TPRI sold millions of barrels of gasoline containing MTBE to major national distributors that distribute gasoline in Vermont. One could not say with certainty whether the exact MTBE or MTBE gasoline manufactured by TPRI was sold in Vermont.

<u>Analysis</u>

Under the Vermont long arm statute, 12 V.S.A. § 913(b), the court may "assert jurisdiction over individual defendants to the full extent permitted by the Due Process Clause." *Northern Aircraft, Inc. v. Reed*, 154 Vt. 36, 40 (1990). "In order to invoke personal jurisdiction over an individual defendant, the defendant must have 'certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Id.* at 41 (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Applying the minimum contacts test, jurisdiction over a nonresident defendant is improper if it is based solely on "fortuitous, attenuated or random contacts." *Id.* at 41–42. The key determination is whether a defendant "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).

The parties dispute under what circumstances a plaintiff can establish a defendant's purposeful availment through the so called "stream of commerce" doctrine. "[The stream of commerce] refers to the movement of goods from manufacture through distributors to consumers . . . ." *J. McIntyre Machinery, Ltd. V. Nicastro*, __ U.S. __, 131 S.Ct. 2780, 2788 (2011) (Kennedy, J.). "[A] defendant may in an appropriate case be subject to jurisdiction without entering the forum—itself an unexceptional proposition—as where manufacturers or distributors 'seek to serve' a given State's market." *Id.* (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 298 (1980). It is not sufficient, however, that the product causing injury foreseeably made its way to the forum state. *World-Wide Volkswagen Corp.*, 444 U.S. at 295–97. "[T]he foreseeability that is critical to due process analysis is not the mere likelihood that a product will find its way into the forum State. Rather, it is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *Id.* at 297. Thus, "if the sale of a product of a manufacturer or distributor . . . is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve directly or indirectly, the market for its product in other States, it is not unreasonable to subject it to suit in one of those States . . . ." *Id.* Therefore, where a defendant intentionally acts to place its product into a national distribution system in order to advance its commercial interest, it "should reasonably anticipate being sued in Vermont if a dispute arises from these activities." *Dall v. Kaylor*, 163 Vt. 274, 276 (1995).

The Federal District Court for the Southern District of New York, in a consolidated multi-district litigation involving numerous alleged injuries caused by MTBE, held that a defendant manufacturer of MTBE gasoline, Lyondell-Citgo Refining LP ("LCR"), "[was] subject to personal jurisdiction in each of the forum states because it supplie[d] MTBE-

2

containing gasoline to the national market." *In re Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation*, 399 F.Supp.2d 325, 332 (S.D.N.Y., 2005). The court rejected LCR's argument that personal jurisdiction was lacking because it only sold MTBE gasoline to one buyer as "that buyer [was] Citgo, whose nationwide distribution network reach[ed] every one of the relevant states." *Id.* The court held that "[b]y selling large volumes of MTBE-containing gasoline to a nationwide distributor, LCR expected, or reasonably should have expected, its product to reach all of the states in the nation. Thus, LCR purposefully availed itself of the privilege of doing business in the forum states, such that it could reasonably foresee being haled into court in those states." *Id.*

TPRI argues that because it does not have any direct contacts with Vermont and all of the contacts alleged by the State between TPRI and Vermont are through third parties, this court does not have personal jurisdiction over TPRI. Much like LCR in the multi-district MTBE litigation, however, TPRI took affirmative action when it chose to sell neat MTBE and MTBE blended gasoline through the national distribution scheme and specifically the Colonial Pipeline and its operations within New Jersey. TPRI argues that although it sold millions of gallons of MTBE containing gasoline into the northeastern United States gasoline market, it cannot reasonably expect to be haled into court in any specific jurisdiction because it did not distribute that gasoline itself and remained ignorant of where its gasoline was distributed. This, however, is contrary to the U.S. Supreme Court's reasoning in *World-Wide Volkswagen* and the Vermont Supreme Court's decision in *Dale*.

## Conclusion

Because TPRI undisputedly manufactured neat MTBE and MTBE gasoline and sold those products to national distributors who in turn distributed those products for sale in the northeast market, including in Vermont, TPRI has sufficient contacts with the State of Vermont for the exercise of personal jurisdiction over it with respect to alleged injuries resulting from the sale of MTBE gasoline in Vermont.

## Order

For the foregoing reasons, TPRI's motion to dismiss is *denied*.

Dated at Montpelier, Vermont this 15th day of January 2015.

_____
Mary Miles Teachout
Superior Judge

3